**Francis J. KELLY, Plaintiff,**

v.

**DREXEL UNIVERSITY, Defendant.**

**Civ. A. No. 94–5336.**

United States District Court,
E.D. Pennsylvania.

Nov. 7, 1995.

Order Denying Reconsideration
Dec. 6, 1995.

Mary Ann Hagan, Philadelphia, PA, for plaintiff.

Kathryn H. Levering, Maureen L. Hogel, Drinker, Biddle and Reath, Philadelphia, PA, for defendant.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

Plaintiff Francis J. Kelly ("Kelly" or "Plaintiff") brought this action against his former employer Drexel University ("Drexel"), alleging that Drexel terminated his employment and subsequently failed to rehire him on the basis of age and disability in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.Cons.Stat.Ann. §§ 951–963. In addition, plaintiff alleges that Drexel discriminated against him with respect to his compensation, terms, conditions, and privileges of employment because of his age. *See* plaintiff's complaint ¶ 26.

Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and a complaint with the Pennsylvania Human Relations Commission on July 1, 1993. On May 31, 1994 the EEOC issued a no-cause determination. Plaintiff filed this action on August 29, 1994.

Pending before this Court is the motion of Drexel for summary judgment pursuant to Fed.R.Civ.P. 56(c) (Document No. 6). This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1367. Upon consideration of the motion of defendant and the response of plaintiff thereto, and for the following reasons, the motion of defendant will be granted.

### I. FACTUAL BACKGROUND [1]

In April, 1981 Drexel hired plaintiff, a 56–year–old college graduate, as a buyer in the purchasing department. Approximately twelve years later, when plaintiff was 68 years old, Drexel terminated plaintiff's employment as part of its university-wide reduction in force ("RIF"). At the time of plaintiff's termination, plaintiff was one of three buyers in the purchasing department. Each buyer had a specific area of responsibility: plaintiff supervised general purchases and held the title Senior Buyer; Thomas Tucker ("Tucker"), the Scientific Buyer (age 54),

---

1. Pursuant to Fed.R.Civ.P. 56(c), these facts are based upon the evidence of record and considered in the light most favorable to plaintiff.

handled the science departments; and 46–year–old John Dick ("Dick") dealt with the university's physical plant department and held the title Physical Plant Buyer. James Graham, age 50, acted as the director of the department, overseeing the three buyers and the Buyer Assistant, whose job involved administrative and clerical tasks.

In September, 1987 plaintiff suffered an injury to his hip, which causes him to limp. Plaintiff's orthopaedic specialist diagnosed plaintiff's condition as severe post-traumatic degenerative joint disease of the right hip and protrusio acetabulum of the right hip joint (Plaintiff's Exhibit No. 37).

Because of financial difficulties in 1993, Freddie Gallot ("Gallot") instructed Graham to reduce the purchasing department's budget in the amount of $30,000. In order to comply, Graham eliminated plaintiff's position, which paid an annual salary of $32,340. Plaintiff received notice on January 26, 1993 that effective January 31, 1993 he no longer had a position in the department.

## II. *LEGAL STANDARD*

The standard for a summary judgment motion in federal court is set forth in Fed.R.Civ.P. 56. Rule 56(c) states that:

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). In addition, a dispute over a material fact must be "genuine," *i.e.*, the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

The moving party has the initial burden to identify evidence that it believes shows an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265

(1986). When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2553. If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982). The court must consider the evidence of the non-moving party as true, drawing all justifiable inferences arising from the evidence in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. To defeat the motion for summary judgment, the non-moving party must offer specific facts contradicting those set forth by the movant, thereby showing that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990).

## III. *DISCUSSION*

A plaintiff alleging discrimination in employment may present either direct or circumstantial evidence that would allow a reasonable factfinder to infer discrimination. *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 n. 4 (3d Cir.1995); *see Price Waterhouse v. Hopkins*, 490 U.S. 228, 244–46, 109 S.Ct. 1775, 1786–88, 104 L.Ed.2d 268 (1989) (establishing the framework for mixed-motives cases that involve direct evidence); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) (establishing the framework for pretext cases that involve circumstantial evidence); *Mardell v. Harleysville Life Ins. Co.*, 31 F.3d 1221, 1225–26 & n. 6 (3d Cir.1994). Although the two frameworks for analyzing direct and circumstantial evidence developed originally in the context of Title VII cases, courts utilize them in the

context of ADEA and ADA claims as well. *See Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994) (using the mixed-motives framework to examine employer liability under the ADEA); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 342 (3d Cir.1990) (noting that the Court of Appeals for the Third Circuit has adopted the pretext framework for ADEA cases); *Zambelli v. Historic Landmarks, Inc.*, No. CIV.A.94–3691, 1995 WL 116669, at *8 (E.D.Pa. March 20, 1995) (employing the same burden shifting standards for an ADA case as used with other employment discrimination statutes).[2] Because plaintiff asserts in various portions of his memorandum that he has direct as well as circumstantial evidence, I will examine plaintiff's claims under both the mixed-motives framework and the pretext framework. The federal and state claims will be discussed together because the PHRA utilizes the same analytical framework as that established in the Title VII cases and, hence, the cases brought under the ADA and the ADEA. *See Doe v. Kohn Nast & Graf*, 862 F.Supp. 1310, 1323 (E.D.Pa.1994) (PHRA "was modelled after Title VII [and] is analyzed the same as Title VII cases. That analysis achieves the same result as the ADA claim."); *see also Chmill v. City of Pittsburgh*, 488 Pa. 470, 412 A.2d 860, 871 (1980) (PHRA, although an independent state statute, should be construed in light of principles of fair employment law which have emerged from federal anti-discrimination statutes).

### A. Plaintiff's Termination

#### 1. *Mixed–Motives Framework*

 A mixed-motives case arises when the plaintiff alleges that the employer based the employment decision upon both legitimate and illegitimate factors. *Miller v. Cigna Corp.*, 47 F.3d 586, 594 (3d Cir.1995). To proceed under the mixed-motives framework, the plaintiff initially must produce evidence "so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production." *Armbruster*, 32

F.3d at 778. In order to shift the burden to the employer, the plaintiff must present direct evidence that is more persuasive than that sufficient to satisfy the prima facie case in a pretext framework. *Mardell*, 31 F.3d at 1225 n. 6. To rebut a plaintiff's case-in-chief the defendant must prove that it would have made the same decision even if it had not allowed the illegitimate factor to play such a role. In essence, the employer must put forth an affirmative defense. *Id.*

 Plaintiff contends that the record "contains abundant direct evidence of bias." Plaintiff's memorandum at 18. The Court of Appeals for the Third Circuit recognizes as direct evidence "policy documents or statements of a person involved in the decision-making process that reflect a discriminatory or retaliatory animus." *Hook v. Ernst & Young*, 28 F.3d 366, 374 (3d Cir.1994). The plaintiff's evidence must directly link the decisionmaker's discriminatory animus to the adverse employment decision. Most often, such evidence involves the decisionmaker's conduct or statements; however, stray remarks and isolated comments are not enough. *Id.* at 374–75.

Plaintiff's review of the evidence set forth in his memorandum of law in response to Drexel's motion for summary judgment does not reveal any instance where Graham, or any other Drexel employee, made statements or engaged in conduct that manifested a bias regarding plaintiff's hip injury or limp. Having a noticeable and apparent limp, plaintiff implies that Graham's mere awareness of the limp constitutes direct evidence of discriminatory animus. Plaintiff, however, does not set forth any evidence that Graham considered plaintiff's limp as a reason to eliminate plaintiff's position. *See id.*

 Plaintiff also relies on the report of Dr. Richard S. Andrulis, Ph.D., who examined plaintiff's case file in the light of the principles of industrial and organizational psychology. Dr. Andrulis observed that the department in which plaintiff was employed

---

**2.** The *Zambelli* court recognized that the summary judgment standards for claims brought under the ADA have not been established and stated its belief that "the Circuits will eventually read

the ADA in pari materia with the other employment discrimination statutes." *Zambelli*, 1995 WL 116669, at * 8.

did not delineate job descriptions and did not have an objective methodology to determine the tasks associated with plaintiff's position. In addition, Dr. Andrulis noted that there was no structured system for performance evaluations, giving rise to the development of stereotypes in the workplace and the possibility that such stereotypes may play a role in employment decisions. Even assuming that Dr. Andrulis is a competent expert witness permitted to testify under Fed.R.Evid. 702,[3] I find that the substance of the doctor's report, in and of itself, does not constitute direct evidence. *See Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring) (expert testimony about stereotyping in the workplace, standing alone, does not shift the burden to the employer in a mixed-motives case). Lacking sufficient direct evidence, plaintiff cannot proceed with a mixed-motives framework for his claims of discrimination based on disability.

 In support of his age discrimination claim, plaintiff offers as direct evidence Graham's comment referring to plaintiff's retirement and a letter from Drexel's personnel department. In 1992, when plaintiff's son graduated from college, Graham asked plaintiff when he planned to retire. Plaintiff's memorandum at 13. Although Graham made the decision to eliminate plaintiff's position in early 1993, there is no evidence to link Graham's question to Graham's decisionmaking process, which resulted in the elimination of plaintiff's position. Comments regarding retirement often arise contemporaneously with a child's graduation from college, considering that most parents rejoice when tuition bills cease to arrive each semester. I find that Graham's inquiry about plaintiff's expected retirement was a stray remark that reflected a common and casual reference to the often-anticipated completion of a parent's financial obligations to his children and not age bias. *See Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring) (statements by decisionmakers unrelated to

the decisional process do not constitute direct evidence sufficient to shift the burden to the employer).

 The letter plaintiff received from Drexel after his employment terminated, which referred to plaintiff as a retiree because he had worked more than 10 years and was presently over age 55, does not and cannot reflect age bias. This letter merely defines plaintiff's status as a retiree and explains the benefits to which he is entitled. Given that plaintiff's employment with Drexel began at age 56, there is no rational basis to interpret this corporate policy, which classified individuals over age 55 as retirees, as evidence of discriminatory animus. Therefore, neither Graham's casual comment nor the corporate letter constitute direct evidence sufficient to shift the burden to Drexel under a mixed-motives framework.

### 2. *Pretext Framework*

 Pursuant to the Supreme Court's three step, burden-shifting analysis established in *McDonnell Douglas Corp. v. Green,* plaintiff must first set forth a prima facie case of discrimination by showing (1) plaintiff belongs to a protected class, (2) plaintiff performed his job satisfactorily, (3) plaintiff suffered an adverse employment action, and (4) defendant employer has treated similarly-situated employees more favorably.[4] *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

 Once plaintiff establishes a prima facie case, the defendant must articulate a legitimate nondiscriminatory reason for its action. This burden is minimal. *See Mardell,* 31 F.3d at 1225 n. 6. After defendant's showing, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons produced by the defendant are a pretext for discrimination. *Id.* The ultimate burden of proving intentional discrimination remains with the plaintiff, *i.e.,* the plaintiff bears responsibility

---

3. Drexel argues that Dr. Andrulis' report is not admissible as expert testimony under Fed. R.Evid. 702. Defendant's reply memorandum at 4. For the purposes of this motion, I will consider the report of Dr. Andrulis in the light most favorable to plaintiff.

4. The prima facie cases has been adapted to meet the specific allegations set forth in claims alleging age or disability discrimination. *See infra* Part III.A.2.a.

to persuade the factfinder that the employer's proffered reason was not the true reason for the employment decision and that the plaintiff has been the victim of intentional discrimination. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

■ a. *Prima Facie Case.* A prima facie case of disability discrimination[5] requires plaintiff to prove that (1) he is a member of a protected class, *i.e.,* has a disability as defined by the statute; (2) his work performance met the employer's legitimate job expectations; (3) he was terminated; and (4) employees not in the protected class were treated more favorably. *See Zambelli,* 1995 WL 116669, at *7.

Plaintiff claims that he is disabled due to his hip injury and limp. The ADA defines disability as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2); *see Fehr v. McLean Packaging Corp.,* 860 F.Supp. 198, 200 (E.D.Pa.1994) (stating that the definition of disability in the PHRA is coextensive with the ADA definition). Accordingly, plaintiff must prove that he cannot walk or that his limp substantially limits his ability to walk; there is a record that his condition substantially limits his ability to walk; or that defendant regards plaintiff's injury and limp as substantially limiting his ability to walk.

Drexel argues that plaintiff is not disabled, and not a member of the protected class, because his hip injury does not "substantially limit" his ability to walk.[6]

The term "substantially limits" is defined as

(i) unable to perform a major life activity that the average person in the general population can perform; or

(ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The factors considered to determine whether an impairment is "substantially limiting" include:

(i) the nature and severity of the impairment;

(ii) the duration or expected duration of the impairment; and

(iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2).

■ The Court of Appeals for the Seventh Circuit has recognized the dearth of cases addressing the application of the term "substantially limits" to the major life activity of walking. *See Hamm v. Runyon,* 51 F.3d 721, 724 n. 3 (7th Cir.1995). Perhaps this is why plaintiff fails to address Drexel's contention that plaintiff's limp does not "substantially limit" his ability to walk. During a deposition plaintiff stated that he cannot

---

**5.** Drexel does not dispute that plaintiff has met the requirements to establish a prima facie case under the ADEA and the PHRA for claims of age discrimination. Defendant's memorandum at 26. In the context of job elimination, a plaintiff may show a prima facie case of age discrimination by producing evidence that (1) he belongs to the protected class, *i.e.,* is older than forty; (2) was qualified by training and experience for the job from which he was discharged; and (3) other workers not in the protected class were retained. *Torre v. Casio, Inc.,* 42 F.3d 825, 830–31 (3d Cir.1994); *Turner,* 901 F.2d at 342. With regard to age discrimination claims, the third factor is met as long as the other workers that were retained were significantly younger than the plaintiff, even if these other workers might also

be within the protected class, *i.e.,* older than forty. *See Torre,* 42 F.3d at 831 (finding third factor of age discrimination prima facie case met even when some of the retained employees were 41); *Turner,* 901 F.2d at 342 (same).

**6.** Drexel concedes to the first two components of the definition of disability: that plaintiff's hip injury is an impairment and that walking constitutes a major life activity. *See* 29 C.F.R. § 1630.2(i). Plaintiff admits that his limp does not affect his ability to work. Therefore, I need not consider whether plaintiff's limp substantially limits the major life activity of working. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j); 2 EEOC Compl. Man. (BNA) § 902:0018, at 902–18.

walk "more than a mile or so" and must climb stairs at a slower pace while holding the rail. Defendant's memorandum at 14. The guidelines interpreting the ADA require a comparison of the plaintiff's ability to walk as compared to the ability of the average person in the general population. *See* 29 C.F.R. § 1630.2(j). Accordingly,

> an individual who had once been able to walk at an extraordinary speed would not be substantially limited in the major life activity of walking if, as a result of a physical impairment, he or she were only able to walk at an average speed, or even at moderately below average speed.

29 C.F.R. Pt. 1630, App. § 1630.2(j). I find as a matter of law that plaintiff's trouble climbing stairs, which requires him to move slowly and hold the handrail, does not substantially limit his ability to walk. *See Stone v. Entergy Servs., Inc.*, No. CIV.A.94–2669, 1995 WL 368473, at *4 (E.D.La. June 20, 1995) (finding that plaintiff's difficulty climbing stairs and inability to walk briskly did not substantially limit his ability to walk). The guidelines also state that "an individual who, because of an impairment, can only walk for very brief periods of time would be substantially limited in the major life activity of walking." 29 C.F.R. Pt. 1630, App. § 1630.2(j). Plaintiff has testified that he must limit his walking to approximately one mile. Although I recognize the likelihood that the average person in the general population is able to walk one mile without pain, one mile is not a "very brief period of time."

■ Plaintiff provides the Court with a letter from his treating physician, who diagnosed plaintiff with severe post-traumatic degenerative joint disease of the right hip and protrusio acetabulum of the right hip joint, which causes "great difficulty in walking" (Plaintiff's Exhibit No. 37). At his deposition, however, plaintiff admitted that his physician had not specifically restricted his activ-

ities. *See* 29 C.F.R. Pt. 1630, App. § 1630.2(j); 2 EEOC Compl.Man. (BNA) § 902:0019, at 902–19 (recognizing that the effect of the impairment on the life of the individual, as opposed to the name or diagnosis of the impairment, is the key to determine whether the individual has a disability). Upon examination of the plaintiff's deposition, the physician's letter, and the relevant EEOC regulations, I find that plaintiff has not and cannot meet his burden of proving that he has a physical impairment that substantially limits a major life activity.[7]

■ The ADA and PHRA also provide that plaintiff may maintain an action if he is "regarded as having such an impairment." The EEOC regulations describe three instances in which an employee is regarded as having a disability:

1. [The individual] has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

2. [The individual] has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

3. [The individual] has none of the impairments defined [by the definition of impairment contained in the regulations] but is treated by the covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l). Plaintiff must show that his supervisors knew of the hip injury and limp and perceived the impairment as disabling. *See Hamm*, 51 F.3d at 725. The record indicates that plaintiff's limp is noticeable and apparent. Thus, I find that Graham knew of plaintiff's impairment. However, mere awareness does not prove that Graham perceived plaintiff's impairment as disabling. Plaintiff has not produced any evidence to show that any Drexel employee treated him

---

7. Attached as an exhibit to Drexel's memorandum is a personnel form which asks employees to identify any disability. Defendant's memorandum at 16 n. 15. When asked to complete this form after the onset of his hip injury, plaintiff did not indicate that he had a disability. Plaintiff argues that he "never executed any form representing the lack of any disability and the form

relied upon by Defendant contains a date that is clearly not in plaintiff's handwriting." Plaintiff's memorandum at 14. Pursuant to Fed.R.Civ.P. 56, I am obligated to consider the facts in the light most favorable to the plaintiff. Therefore, I have not considered this personnel form to reach my conclusion that plaintiff has not and cannot meet his burden of proving that he is disabled.

as disabled. In fact, Graham stated in his deposition that he did not consider plaintiff to be disabled. Moreover, plaintiff concedes that he never asked for any kind of accommodation to his physical impairment at work. Plaintiff's memorandum at 15. I find that plaintiff has failed to set forth evidence that anyone at Drexel perceived him to be disabled. Therefore, plaintiff has not presented evidence from which a jury could reasonably conclude that plaintiff is disabled as defined by the ADA and the PHRA.[8]

■ b. *Legitimate Nondiscriminatory Reason.* By establishing a prima facie case, a plaintiff eliminates the most common nondiscriminatory reasons for the adverse employment action and creates a presumption of discrimination. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). Once a prima facie case has been established, the defendant must produce some evidence that supports a legitimate, nondiscriminatory reason for the employer's action. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994); *accord Turner,* 901 F.2d at 342. Assuming that plaintiff is a member of the protected class for both disability and age discrimination claims,[9] and that he has established a prima facie case for both claims, Drexel must proffer a legitimate nondiscriminatory reason for its decision to terminate plaintiff.

■ Drexel asserts that an RIF necessitated the elimination of plaintiff's position in the purchasing department. Economic necessity is a legitimate, nondiscriminatory reason for employment decisions. *See Naas v. Westinghouse Elec. Corp.,* 818 F.Supp. 874, 879–80 (W.D.Pa.1993) (evidence that business dropped 30–40% during a 6–8 month period); *Dolence v. United States Nat'l Bank,* 797 F.Supp. 423, 425 (W.D.Pa.) (evidence of financial losses during one year and greater projected losses for the coming year), *aff'd mem.,* 975 F.2d 1549 (3d Cir. 1992). During his deposition and in the letter to Gallot, Graham explained that he could reduce his budget by $30,000 only by eliminating one position in the department. Graham decided to eliminate plaintiff's position, rather than that of Tucker or Dick, based on the needs of the department after the reduction in staff and the relative computer skills of the employees. This, also, constitutes a legitimate business reason. *See Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1213–14 (3d Cir.1988) (finding as a legitimate business reason an employer's selection for layoff based on determination that another employee was more qualified to handle the post-RIF responsibilities), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989). Thus, Drexel has articulated a legitimate business reason for its employment determination.

■ c. *Burden of Persuasion.* After finding that Drexel has articulated a legitimate nondiscriminatory reason for its employment decision, the burden shifts back to the plaintiff to show that Drexel's proffered reasons are pretext for discriminatory animus and that Drexel terminated plaintiff

8. Plaintiff argues, without any supporting case citations, that he is the member of a "discreet subclass": older workers with disabilities. Plaintiff's memorandum at 5. The Supreme Court of the United States has recognized that Title VII prohibits discrimination against the protected class as a whole and against a subclass within the protected class. *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) (defining the protected class as women with preschool children). *Phillips* and its progeny involve Title VII claims alleging gender discrimination against a discrete group of individuals of one sex and are referred to as "sex-plus discrimination cases." *See Arnett v. Aspin,* 846 F.Supp. 1234, 1240 (E.D.Pa.1994). Although I recognized a "sex-plus-age" discrimination claim under Title VII in *Arnett,* I specifically stated: "It is important to remember that . . . Arnett's complaint contains a claim for sex discrimination, not age discrimination." *Id.* I find no authority to recognize an "age-plus-disability" discrimination claim under the ADEA. Therefore, plaintiff is not entitled to protection as a member of a subclass of older workers with disabilities.

9. Drexel has conceded for the purposes of its motion that plaintiff has met the burden of establishing a prima facie case for age discrimination. I have found that plaintiff has not met this burden for the disability claims; however, even assuming that plaintiff satisfies the prima facie case for the age and disability claims, further examination of the claims pursuant to the pretext framework under *McDonnell Douglas* warrants my decision to grant summary judgment in favor of Drexel.

based on his age and/or disability. *See Fuentes*, 32 F.3d at 763. The plaintiff may survive a motion for summary judgment only by pointing to "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. Plaintiff does not dispute Drexel's economic hardship. Instead, plaintiff contends that the evidence of record, viewed in the light most favorable to plaintiff, would allow a reasonable jury to infer that Drexel's proffered reason of computer deficiency is pretextual.

The evidence of record includes plaintiff's educational background, experience, and exemplary record of performance in the purchasing department. Plaintiff compares himself to Tucker, intimating that Tucker should have been discharged instead of plaintiff. For example, plaintiff highlights that he has a college degree and more experience than Tucker as a buyer, both in the Drexel purchasing department and from previous employment. Plaintiff recalls that he frequently advised Tucker when Tucker made purchase orders while working in the department. Plaintiff has provided affidavits from members of the Drexel faculty who compliment plaintiff's effective and efficient job performance (Plaintiff's Exhibit No. 26). Finally, plaintiff notes that during Graham's absence, he took command of the department's operations. Unfortunately, plaintiff fails to understand that his commendable record of service for Drexel is not in dispute. Drexel does not put forth as its legitimate nondiscriminatory reason plaintiff's job performance. In fact, Drexel specifically informed plaintiff that job performance was not a consideration when his position was eliminated.

■■■■■ Plaintiff asserts that it was improper for Graham to base the employment decision on the ability to adapt to the computerized purchasing system; that he possessed adequate computer skills to perform his job; that the bulk of computer work was handled by the Buyer Assistant; that he had computer training unbeknownst to Graham; and that he owned a home computer. With regard to discrediting an employer's proffered reason, the Court of Appeals for the Third Circuit has said the following:

> To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Fuentes*, 32 F.3d at 765 (citations and internal quotation marks omitted) (emphasis in original). An employer is free to discharge an employee, as long as the employer's reason is not one precluded by federal or state statute. Drexel was free to choose any nondiscriminatory criteria upon which to base its employment decision. Graham's decision to prioritize computer proficiency and the ability to adapt to an increased workload is a business decision not subject to review by this Court. *Ramos v. Bethlehem Steel Corp.*, No. CIV.A.90–2594, 1991 WL 34239, at *5 (E.D.Pa. Mar. 12) ("Court does not sit as a super-personnel department that reexamines an entity's business decisions." (quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir.1986))), *aff'd*, 945 F.2d 395 (3d Cir.1991).

■■■■■ Plaintiff disagrees with Graham's assessment of his ability to utilize the computerized purchasing system. From plaintiff's assertions that he participated in computer training, owned a home computer, and was never informed by anyone at the university that he lacked the requisite computer skills, it can be inferred that plaintiff utilized the computerized purchasing system in a satisfactory manner to adequately perform his job. But Graham considered computer proficiency in light of an RIF—that the retained

employee would have to absorb the work of the eliminated employee and continue to perform at an efficient pace. It is permissible for an employer to consider the future adaptability of an employee once two positions are consolidated as the result of an RIF. *See Healy,* 860 F.2d at 1213–14. Moreover, plaintiff's estimations of his own qualifications and computer literacy do not prove that Graham has used his stated reason as a mask to cover discriminatory animus. In a letter dated January 30, four days after plaintiff was notified of his termination date, Graham explained his decision to eliminate one position within the department; the need to eliminate either the Scientific Buyer position or the Senior Buyer position; and that he made the decision upon consideration of the employees' abilities to absorb the extra work and their knowledge of the computerized purchasing system. The letter provides contemporaneous documentation of Graham's decisionmaking process. The court's task is not to determine whether the decision was prudent or factually correct, but whether a reasonable factfinder could infer that the employer's proffered reason masks a decision based upon an illicit factor.

■ Plaintiff's further arguments that the department did not systematically evaluate employees' work performance and that Dr. Andrulis observed the absence of methodology to determine job tasks, which creates the possibility that stereotypes are part of the decisionmaking process, do not bolster plaintiff's attempts to discredit Drexel's proffered reason for the termination or to show intentional discrimination. *See id.* Nor does the assertion that managers at Drexel did not have equal employment opportunity training prove that stereotypes or illicit factors were part of Graham's decision to eliminate plaintiff's position. Such evidence does not point to any inconsistencies, implausibilities, or incoherencies in Drexel's proffered reason for termination and a reasonable jury could not infer that the employer discriminated against plaintiff on the basis of age or disability. *See Fuentes,* 32 F.3d at 765.

■ Regarding the age discrimination claim, plaintiff adds to the evidence of record discussed above a letter regarding retirement benefits and the comment about retirement made by a supervisor.[10] As discussed above, the letter merely informed plaintiff of his status as a retiree, according to corporate policy, and the benefits to which plaintiff is entitled. I find that a reasonable jury could not find that the letter supports an inference of age bias.

■ On its face, the comment by plaintiff's supervisor, referring to plaintiff's retirement, does not suggest age bias. *EEOC v. MCI Int'l, Inc.,* 829 F.Supp. 1438, 1449 (D.N.J.1993) ("[T]here is nothing per se discriminatory about an employer asking an employee about retirement plans."). Other circuits have found that comments less neutral have not showed pretext. For example, in *Birkbeck v. Marvel Lighting Corp.,* the vice-president primarily responsible for the layoff decisions commented that "there comes a time when we have to make way for younger people." *Birkbeck,* 30 F.3d 507, 511 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994). The Court of Appeals for the Fourth Circuit found that this statement reflects a truism and did not create an inference of age bias. *Id.* at 512. Similarly, the Court of Appeals for the Fifth Circuit found an employer's comment that "if he [the employer] were in [plaintiff's] position he would be out seeing the world" to constitute a "musing[ ] about eventual retirement," which "simply [does] not evidence discriminatory intent." *Moore v. Eli Lilly & Co.,* 990 F.2d 812, 818 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). In *Armbruster,* the Court of Appeals for the Third Circuit found that several comments by individuals involved in the termination of the plaintiffs, in addition to documents containing age notations of employees, created a genuine issue of pretext. *Armbruster,* 32 F.3d at 783 (comments that employees to be transferred should be "senior people;" should be moved out of their offices quickly; and "should have seen the writing on the wall"). Unlike the plaintiffs in *Armbruster,* however, plaintiff in

10. *See supra* Part III.A.1.

this case has not presented additional competent evidence of pretext. I find that Graham's statement, standing alone, does not create a genuine issue of material fact as to whether age played a role in the employer's decisionmaking process and whether it had a determinative effect on the outcome of that process.[11]

## B. Failure to Rehire

■ Plaintiff has alleged in his complaint that Drexel failed to rehire him on the basis of age and disability in violation of the ADA, the ADEA, and the PHRA. To establish a prima facie case, plaintiff must show (1) that he belongs to the protected class, (2) that he applied for and was qualified for the job; (3) that he was rejected despite his qualifications; and (4) that the employer either ultimately filled the position with someone sufficiently younger or someone who is not disabled, which permits an inference of age and/or disability discrimination, or continued to seek applicants from those having the claimant's qualifications. *See Fowle v. C & C Cola,* 868 F.2d 59, 61 (3d Cir.1989); *MCI Int'l,* 829 F.Supp. at 1482.

■ Even assuming that plaintiff falls within the protected class for both age and disability claims,[12] plaintiff's memorandum does not point to the position for which he applied. Plaintiff wrote a letter dated July 1, 1993 to Drexel requesting information about "appropriate openings within the purchasing department, or elsewhere in the University." (Plaintiff's Exhibit No. 4). There is no other evidence of record to show that plaintiff actually applied for a particular position for which he was qualified. Moreover, plaintiff does not present evidence to show that a younger or non-disabled person was hired for the same position despite plaintiff's qualifications. Therefore, plaintiff has not met his burden to establish a prima facie case and his claim alleging discrimination in failing to rehire must fail.

11. Although plaintiff included in his complaint allegations that Drexel discriminated against him on the basis of age with respect to compensation, terms, conditions, and privileges of employment, plaintiff does not address these contentions. Nor is there any evidence in the record to indicate that such discrimination occurred. Thus, I find that plaintiff has not sustained his burden to

## IV. CONCLUSION

In sum, plaintiff has failed to provide evidence that Drexel terminated his employment based upon his disability or age. Additionally, plaintiff has not established a prima facie case to support his claim that Drexel failed to rehire him on the basis of age or disability. Finally, plaintiff does not address and does not present any evidence to support his claim that Drexel discriminated against him with respect to his compensation, terms, conditions, and privileges of employment because of his age. Accordingly, summary judgment will be granted in favor of Drexel and against plaintiff.

An appropriate order follows.

## ORDER

**AND NOW,** this 7th day of November, 1995, upon consideration of the motion of Drexel University for summary judgment pursuant to Fed.R.Civ.P. 56 (Document No. 6), and the response of plaintiff Francis J. Kelly thereto, upon consideration of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motion of Drexel University is **GRANTED** and summary judgment is hereby entered in favor of Drexel University and against Francis J. Kelly. This is a final order.

## ORDER

**AND NOW,** this 6th day of December, 1995, upon consideration of the motion of plaintiff Francis J. Kelly for reconsideration (Document No. 15) of this Court's Order of November 7, 1995, and the response of defendant Drexel University thereto, having made the following findings of fact and conclusions of law:

defeat a motion for summary judgment with respect to this claim.

12. For purposes of this motion, I have concluded that plaintiff is not disabled. *See supra* Part III.A.2.a.

1. In a Memorandum and Order dated November 7, 1995, this Court granted the motion of Drexel University for summary judgment in favor of Drexel University with regard to all counts of the complaint;

2. The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. Therefore, such motion must rely on at least one of three grounds: (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or to prevent manifest injustice. *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986); *Reich v. Compton,* 834 F.Supp. 753, 755 (E.D.Pa.1993), *aff'd in part and rev'd in part on other grounds,* 57 F.3d 270 (3d Cir.1995);

3. Plaintiff argues in his motion for reconsideration that this Court (1) ruled inconsistently with precedent in the Third Circuit; (2) failed to consider the evidence in the light most favorable to the plaintiff; and (3) misconstrued the contentions asserted by the plaintiff in opposition to the motion for summary judgment by Drexel University. Although these three broad statements appear to fall within category three, the contentions made by plaintiff in his memorandum simply reargue issues already resolved by this Court. Therefore, these arguments do not provide a proper basis for reconsideration of the Order dated November 7, 1995;[1]

4. Even if the Court were to consider the arguments of plaintiff on the merits, these arguments are without substance and do not provide any grounds for reversing this Court's earlier decision to grant the motion of Drexel University for summary judgment,

it is hereby **ORDERED** that the motion for reconsideration is **DENIED.**

---

1. Other courts in this circuit have cautioned parties bringing a motion to reconsider to "evaluate whether what may seem to be a clear error of law is in fact simply a disagreement between the Court and the litigant." *Dodge v. Susquehanna Univ.,* 796 F.Supp. 829, 830 (N.D.Pa.1992).