Arthur POFF, Plaintiff,

v.

PRUDENTIAL INSURANCE COMPANY
OF AMERICA, et al., Defendants.

No. 94–CV–7005.

United States District Court,
E.D. Pennsylvania.

Jan. 4, 1996.

William J. Fries, Gross, McGinley, La-Barre & Eaton, Allentown, PA, for plaintiff.

Michael G. Tierce, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, John E. McFall, Denise Cotter Villani, McFall Law Firm, Dallas, TX, for defendants.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This memorandum disposes of both the motion for summary judgment filed by the sole remaining defendant in this employment discrimination case, BancTec, U.S.A., Inc. ("BancTec"), as well as the motion for partial

summary judgment submitted by the plaintiff, Arthur Poff. Mr. Poff is a former BancTec employee who alleges in his complaint that he was discharged from his employment in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. (the "ADA"). BancTec argues that Mr. Poff was terminated because of a propensity toward violent behavior, and not for some unlawful purpose. Mr. Poff opposes BancTec's motion, and contends in his own motion that there is no dispute as to the issue of whether he is afflicted with a disability. Upon review of the evidence submitted by the parties, we conclude that Mr. Poff has failed not only to point to any evidence tending to cast doubt on BancTec's explanation for its employment decision, but also to identify a genuine issue of disputed fact regarding whether the reason for discharge is a pretext for discrimination. As a result, we will grant BancTec's motion for summary judgment and deny as moot the cross-motion submitted by Mr. Poff.

## BACKGROUND

BancTec is a computer services contractor that leases computer systems and support services to its clients. In 1986, BancTec hired Mr. Poff as a field engineer and assigned him to work on site at the offices of the Prudential Insurance Company of America ("Prudential") in Fogelsville, Pennsylvania. Mr. Poff worked almost exclusively at Prudential during his seven-year tenure, and generally received favorable performance evaluations from his supervisors. In September of 1989, Mr. Poff underwent surgery to address a degenerative joint disease afflicting his hip, and as a consequence, he was absent from work until January of 1990. When Mr. Poff returned to work, he required the assistance of a cane for approximately one month.

By September of 1990, Mr. Poff was experiencing severe pain in both hips, and again was forced to resort to the use of a cane. In March of the following year, he returned to the hospital to undergo bilateral hip replacement surgery, and remained hospitalized for two weeks. In the aftermath of this surgery, Mr. Poff was absent from work through July,

1991. When Mr. Poff returned to work, he walked with a noticeable limp and with the assistance of a cane. He does not dispute that he was reinstated to the same position, with the same pay, as he had occupied prior to his surgeries. Indeed, Mr. Poff wrote in the "employee's comments" section of his 1991 evaluation as follows: "I'm happy with my job. I'm grateful to BancTec for sticking by me through my personal health problems and enabling me to come back to my job."

In addition to the problems with his hip, Mr. Poff asserts that he is disabled in that he has been blind in his right eye since he was a young boy, a condition that significantly hampers his vision. Mr. Poff had cataract surgery in a fruitless attempt to restore sight to the eye prior to joining BancTec. Further, Mr. Poff states that his eye became herniated and disfigured approximately one year prior to his discharge, and that it was unsightly. Other workers at the Prudential site noticed Mr. Poff's eye condition, and referred to him jokingly as "dead eye" or "wood eye." Mr. Poff eventually underwent eye replacement surgery in September of 1993.

On December 7, 1992, while working at the Prudential site, Mr. Poff tripped and fell over a chair, causing severe pain and re-injury to his hips. In the immediate aftermath of the collision with the chair, Mr. Poff experienced anger and frustration, fearing that he had retarded much of the progress he had made rehabilitating his injuries. Mr. Poff then walked across the room and intentionally slammed his hand into a pillar. The force of the blow caused Prudential's halon fire fighting system to discharge. Mr. Poff asserts that he did not know, or have reason to know, that he would cause the discharge of the halon system by striking the pole. As a result of the halon discharge, the room was evacuated to insure the safety of personnel.

On the following day, BancTec's regional director, Raymond Kozicki, met with Kirk McAllister, a Prudential manager, to discuss the incident involving Mr. Poff. Mr. McAllister indicated that he did not want Mr. Poff to return to the Prudential site. Mr. Kozicki and the district manager, Lawrence Guinan, then met with Mr. Poff at a local diner.

They informed Mr. Poff of the seriousness of the incident and advised him that a decision would be made in the short term. On December 15, 1992, Mr. Guinan informed Mr. Poff of his discharge by letter, as follows: "effective 5:00 p.m. on December 15, 1992, your employment is being terminated from BancTec Service Corporation due to misconduct—engaging in an act of violence." Mr. Guinan called Mr. Poff's attention to the Employee Handbook, which defines a "major infraction" as "[m]isconduct which is, or might be, injurious or detrimental to fellow employees, to the employee, or the [sic] BancTec, Inc., and which may result in immediate suspension leading to termination of employment," including "[e]ngaging in acts of violence or threats of violence toward fellow employees, customers, or vendors." Finally, the decision to terminate Mr. Poff was influenced by a previous incident of violence in 1989, when Mr. Poff allegedly threw an Allen wrench and broke a window at the Prudential site. Following the 1989 incident, Mr. Poff was warned in writing that his "position with BancTec is in serious jeopardy," and that any future act of violence would result in the termination of his employment.

Mr. Poff filed the instant complaint on November 18, 1994, alleging that BancTec terminated his employment on account of his eye and hip disabilities in violation of the ADA. After discovery was taken, BancTec filed this motion for summary judgment, in which it argues that no reasonable jury could find that its employment decision was animated by an unlawful discriminatory bias. In his opposition to BancTec's motion, Mr. Poff argues that a jury could reach such a finding, and points to the following evidence from which a jury could reasonably infer that BancTec unlawfully discriminated against him: (1) that BancTec failed to follow its own policy with respect to the investigation of the December 7 incident and Mr. Poff's subsequent termination; (2) evidence showing that BancTec decision-makers went to observe Mr. Poff's medical condition before terminating him; and (3) that another, non-disabled employee who committed a "major infraction" was not terminated. We turn now to address the merits of these contentions as applied to the standard for summary judgment.

## DISCUSSION

### A. The Summary Judgment Standard

This Court is authorized to award summary judgment "if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2511). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. With these principles in mind, the court turns now to the substance of the motions, focusing first on BancTec's motion.

### B. Analysis under the ADA

As we noted above, Mr. Poff asserts that BancTec's stated reason for terminating him, his propensity for violence, was merely a pretext; and that he was in fact terminated on account of both his hip injury and the blindness in his right eye, in violation of the ADA. Under the ADA, an employer may not lawfully "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a) (1995). Pre-

text cases brought under the ADA are generally examined under the same burden-shifting analysis familiar to Title VII and other employment discrimination actions which emerged from the Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 157–58 (3d Cir.1995); *Doe v. Kohn Nast & Graf, P.C.,* 862 F.Supp. 1310, 1318 n. 5 (E.D.Pa.1994).

Thus, the plaintiff bears the initial burden of putting forth evidence to create a prima facie case; that is, the plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the job from which he was discharged; and (3) others not in the protected class were retained. *Kelly v. Drexel Univ.,* 907 F.Supp. 864, 873 (E.D.Pa.1995); *Doe,* 862 F.Supp. 1310, 1318 n. 5. Should the plaintiff succeed in making out a prima facie case, an inference of discrimination is created, and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory rationale for its employment action. Once the defendant makes this showing, the presumption of discrimination evaporates and the onus is again on the plaintiff to prove at trial that the defendant's stated reason is a pretext for discrimination. The plaintiff must therefore show that (1) the reason provided by the employer was false and (2) that discrimination was the real reason for the adverse employment action. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993). At the summary judgment stage, however, the plaintiff need only show that disputed issues of fact exist regarding either (1) whether the stated reason for discharge was false; or (2) whether an unlawful discriminatory purpose was more likely than not a motivating or determinative cause for the employment action. *Torre v. Casio, Inc.,* 42 F.3d 825, 829–30 (3d Cir.1994); *Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir.1994).

Turning to the instant matter, we now consider BancTec's first argument: that Mr. Poff cannot successfully make out a prima facie case. In order to prevail at the summary judgment stage, therefore, BancTec must show that there is no disputed fact regarding at least one of the elements of the prima facie stage of the *McDonnell Douglas* analysis. At the outset, BancTec argues that Mr. Poff cannot prove he was qualified for the job from which he was discharged. From the evidence educed during discovery, however, a reasonable jury could conclude that Mr. Poff performed at an acceptable level. Indeed, the evidence shows that Mr. Poff held the position from which he was discharged for over 6 years, and that he received favorable performance evaluations. Thus, the issue of whether Mr. Poff was qualified is in dispute and therefore cannot be the basis for an award of summary judgment.

Further, BancTec contends that the circumstances surrounding Mr. Poff's termination do not raise an inference of discrimination. BancTec insists that Mr. Poff bears a "heavy burden" in this regard, since the record shows that the parties' employment relationship was unaffected by the alleged disabilities. Defendant's Br. at 9. This line of argument must be rejected, however, because it misapprehends the nature of the prima facie inquiry. While it is true that a plaintiff must offer " 'evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act,' " *E.E.O.C. v. Metal Service Co.,* 892 F.2d 341, 348 (3d Cir.1990) (quoting *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)), the Third Circuit has recognized that a plaintiff's burden at this stage "is not onerous." *Weldon v. Kraft, Inc.,* 896 F.2d 793, 797 (3d Cir.1990). Indeed, our Court of Appeals has held that "[p]roof of discharge will establish a prima facie showing." *Bellissimo v. Westinghouse Elec. Corp.,* 764 F.2d 175, 180 (3d Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986). Here, there is evidence from which a jury could conclude that Mr. Poff was disabled, and therefore a member of a protected class; that he was qualified for his position; and that he was discharged while others were retained. Accordingly, we may not grant summary judgment to BancTec on the

grounds that Mr. Poff cannot make out a prima facie case.

In its effort to rebut Mr. Poff's allegation, BancTec states that Mr. Poff was terminated as a result of his propensity for violent behavior. In support of this assertion, BancTec points to the 1989 incident, when Mr. Poff broke a window at the Prudential site, and the halon discharge occurrence that immediately preceded his discharge. Since this is a legitimate, nondiscriminatory explanation for the discharge, the onus rests with Mr. Poff to point to evidence from which a reasonable jury could conclude that either the stated reason for discharge is false or that an unlawful discriminatory purpose was either a motivating or determinative impetus behind the employment action. *Torre,* 42 F.3d at 830.

In attempting to meet his burden, Mr. Poff argues that BancTec's summary judgment motion must be denied because the proffered reason for the discharge is unworthy of credence. To sustain this argument, the Mr. Poff bears the "difficult burden" of presenting sufficient evidence to cast meaningful doubt upon the explanation provided by BancTec. Thus, he "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *Fuentes,* 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen,* 983 F.2d 509, 531 (3d Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993)). Mr. Poff therefore contends that (1) the disciplinary procedure punishes acts of violence against persons, while he was punished for striking a pillar; (2) BancTec violated its procedure by failing to render a decision within three working days; and (3) another employee who committed a major infraction was not discharged. Thus, we must determine whether any of the evidence supporting these allegations tends to cast doubt on the explanation provided by BancTec.

As we noted above, the first area of contention revolves around the language of the disciplinary procedure. The policy prohibits employees from "engaging in acts of violence or threats of violence toward fellow employees, customers or vendors." Mr. Poff reads the policy to mean that acts or threats of violence must be directed at persons before the policy is triggered, while BancTec argues that it prohibits all acts of violence, as well as threats of violence against persons. This apparent ambiguity is resolved by the language describing major infractions: "Misconduct which is, or might be, injurious or detrimental to fellow employees, the employee, or the [sic] BancTec, Inc." This language, which prohibits conduct potentially injurious to the actor or the company, clearly encompasses the behavior for which Mr. Poff was discharged. Further, we note that Mr. Poff had previously been disciplined for an act of violence, and was warned that further acts of violence would result in his discharge. Thus, the broader nature of the policy against violent behavior was clear.

Finally, even if we were to conclude that BancTec violated its own policy in this manner, such violation does not, standing alone, serve to cast doubt on the proffered reason for discharge. An employer's failure to follow procedure assists a plaintiff's case if such violation, in conjunction with other evidence (such as evidence showing that the policy was disparately applied), tends to show that the proffered reason is not credible. *Wells v. New Cherokee Corp.,* 58 F.3d 233, 236–37 (6th Cir.1995); *Lindsey v. Prive Corp.,* 987 F.2d 324, 328 (5th Cir. 1993). Here, Mr. Poff does nothing more than allege that BancTec failed to follow its own policy. The evidence fails to suggest that Mr. Poff was not discharged as a result of a propensity for violence, as BancTec asserts. As a result, we cannot deny BancTec's summary judgment motion on these grounds.

Mr. Poff's next argument is his least persuasive. He contends that we should deny the instant motion because BancTec failed to follow its own policy with regard to the timing of his discharge. As we noted above, Mr. Poff was terminated eight days following the halon discharge incident, even though BancTec's policy was to resolve disciplinary issues

within three working days. Mr. Poff's theory is that the eight-day period allowed BancTec to assess his medical condition in the aftermath of the incident. In support of this theory, Mr. Poff points to evidence suggesting that BancTec officials were aware that he had re-injured himself on December 7. Thus, the plaintiff contends that BancTec terminated him only after it realized that his condition would render him inactive for a substantial period of time. This violation of procedure, the argument concludes, is sufficient to cast doubt on the proffered reason for discharge.

Upon review of the evidence supporting this contention, however, we conclude that it is insufficient to defeat BancTec's summary judgment motion. First, Mr. Poff contends that Messrs. Kozicki and Guinan were able to assess his condition when they met with him on the day following the halon discharge incident. Mr. Poff fails to identify, however, any evidence suggesting that he informed them of his long-term prognosis, or to explain how Messrs. Kozicki and Guinan were in any way qualified to reach a reasonable opinion as to his condition based upon a meeting over lunch. The other evidence Mr. Poff proffers supports the conclusion that BancTec knew he would be sidelined for a number of days as a result of the December 7 incident. For example, Mr. Kozicki was notified that Mr. Poff visited an emergency room following the fall, and would be incapacitated for a few days. Mr. Poff does not, however, point to any evidence suggesting that BancTec knew that he would be unable to work for an extended period of time. Thus, the conclusion that he would have a jury reach—that BancTec discharged him only after it became aware that his injury would require long term rehabilitation—is plainly illogical in light of the record. As a result, we cannot deny BancTec's motion on these grounds.

Finally, Mr. Poff argues that the disciplinary policy was applied in a discriminatory fashion in that another employee who committed a major infraction was not terminated. Specifically, Mr. Poff contends that an employee named Al Jett was not discharged despite violating company policy regarding sexual harassment. The evidence supporting this assertion is the affidavit of Kim Hood, one of Mr. Poff's co-workers, who swears that Mr. Jett made a number of derogatory and sexually suggestive comments to women on the job site. Mr. Jett was removed from the Prudential site and transferred to another site, but was not otherwise disciplined. Thus, Mr. Poff contends that the different treatment accorded Mr. Jett justifies a ruling on the instant motion in his favor.

Upon careful consideration of this evidence, however, we conclude that it does not support the inference of pretext. First, we note that there is no evidence suggesting that BancTec officials concluded that Mr. Jett had violated company policy after conducting an investigation. The central issue here is whether BancTec transferred Mr. Jett after concluding he had committed a major infraction. The only evidence of the alleged harassment is the affidavit of Ms. Hood, who states that Mr. Jett made inappropriate comments and was subsequently transferred. Thus, there is no evidence from which a jury could conclude that BancTec transferred Mr. Jett after it concluded that he had committed a major infraction. Moreover, even if we assume that BancTec believed Mr. Jett had committed a major infraction, there is no evidence to suggest that Mr. Jett had done so after receiving a written warning regarding his behavior, as Mr. Poff had. Like Mr. Jett, Mr. Poff was not discharged after his first major infraction of company policy. Indeed, Mr. Poff was terminated only after receiving notice in 1989 that he would be discharged if he again engaged in violent behavior. In this crucial respect, Messrs. Poff and Jett were not similarly situated. Accordingly, we conclude that the evidence concerning Mr. Jett does nothing to assist Mr. Poff in defeating the instant motion.

## CONCLUSION

In sum, Mr. Poff has failed to point to any evidence suggesting that BancTec's explanation for the discharge is not credible. In other words, there is no evidence from which a jury could conclude that Mr. Poff was terminated for a reason other than his

violent outbursts. Nor has he raised evidence to indicate that a discriminatory bias was more likely than not a cause of his discharge. As a result, and for the foregoing reasons, we are compelled to grant BancTec's motion for summary judgment. Mr. Poff's cross-motion for partial summary judgment will be denied as moot. An appropriate order follows.

## ORDER

AND NOW, this 4th day of January, 1996, upon consideration of Defendant BancTec's Motion for Summary Judgment, and the response thereto, it is hereby ORDERED, for the reasons set forth in the preceding Memorandum, that said Motion is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment is hereby DENIED as MOOT.