Mary ARNETT, Plaintiff,

v.

Les ASPIN, Secretary of Defense, and Lt. Gen. Charles McCausland, Director of Defense Logistics Agency, Defendants.

Civ. A. No. 93–2065.

United States District Court, E.D. Pennsylvania.

March 29, 1994.

Avivah R.Z. Pinski, Philadelphia, PA, for Mary Arnett.

James G. Sheehan, Asst. U.S. Atty. Civil Div., Karen Elizabeth Rompala, Asst. U.S. Atty., Philadelphia, PA, for Les Aspin and Charles McCausland, Lt. Gen.

## MEMORANDUM

LOWELL E. REED, Jr., District Judge.

This is a case of alleged employment discrimination. Currently before me are the defendants' motions for summary judgment, in limine and to strike (Document No. 3).

This Court has jurisdiction over this case pursuant to 42 U.S.C. § 2000e–5(f)(3), 29 U.S.C. § 621 and 28 U.S.C. §§ 1331.

## I. BACKGROUND [1]

. Plaintiff Mary Arnett began working at the Defense Industrial Supply Center

1. The following facts are presented in the light most favorable to the non-moving party.

("DISC") on May 1, 1978. At the time of the adverse action for which Arnett brings this lawsuit, she was forty-nine (49) years old and was working as a computer specialist/instructor for DISC.[2]

In her complaint, Arnett alleges that on or about November 7, 1990, DISC issued a job opportunity announcement for the position of equal employment specialist, GS–7. Arnett timely submitted an SF–171 employment application. Soon thereafter, Arnett was notified that she was not qualified for the position because her SF–171 application had not reflected a sufficient amount of time as a representative for the Federal Women's Program ("FWP") to qualify her for the GS–7 level.

On December 6, 1990, the same position was readvertised at the GS–5 or GS–7 level. Arnett revised her SF–171 to reflect the number of hours she spent on the FWP and reapplied for the position. Eventually, the personnel office found that both Arnett and another woman, Kelly Williams ("Williams"), were qualified for the position at the GS–7 level as well as the GS–5 level. There were six other applicants who qualified at the GS–5 level only.

On or about January 1991, Williams, who was under thirty (30) years old, was chosen for the position. Soon after Williams was selected, Arnett learned that another equal employment specialist would be leaving and that Arnett was being referred for the position. However, on March 14, 1991, Arnett received a letter informing her that Jaima McCabe ("McCabe"), a 29–year old woman, had been chosen for the position. McCabe had been one of the applicants for the earlier position who had qualified at the GS–5 level.

In this action, Arnett is complaining that she was not given either position because she is a woman who is over forty years old. Arnett claims, and the defendants admit in their answer to her complaint, that every woman selected for the position of equal employment specialist has been under the

age of forty and every male equal employment specialist has been over the age of forty. Complaint at ¶¶ 52–53; *see also* Arnett's Memorandum in Opposition to Motion for Summary Judgment, Affidavit of James D. Rice, attached as Exhibit C. Arnett also claims, and the defendants again admit in their answer, that she and other women candidates over forty have been referred for the position of equal employment specialist, but have been ultimately rejected in favor of younger women or men over forty. Complaint at ¶ 54.

In the current motions, the defendants seek summary judgment on count two of Arnett's complaint which seeks compensation for "age-plus-sex" discrimination in violation of Title VII of the Civil Rights Act of 1964. The defendants also request an order striking Arnett's demands for a jury trial and for compensatory and punitive damages[3] and precluding Arnett from introducing at trial evidence concerning compensatory damages.

For the reasons discussed below, I will deny the defendants' motion for summary judgment and the defendants' motion in limine, and will grant the defendants' motion to strike Arnett's demands for a jury trial and for compensatory and punitive damages.

## II. DISCUSSION

### A. *Motion for Summary Judgment*

#### 1. *Summary Judgment Standard*

■ The examination to be undertaken of a summary judgment motion in federal court is set forth in Fed.R.Civ.P. 56. Rule 56(c) states that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

**2.** In July 1993, she was promoted to computer specialist, GS–11.

**3.** Arnett conceded in her memorandum in opposition to defendants' motion to strike that she is

not entitled to punitive damages. Accordingly, her demand for punitive damages will be stricken.

Fed.R.Civ.P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2725, at 93–95 (1983)). In addition, a dispute over a material fact must be "genuine," *i.e.*, the evidence must be such "that a reasonable jury could return a verdict in favor of the non-moving party." *Id.*

> When a motion for summary judgment is made and supported as provided in ... [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). The evidence proffered does not have to be in a form which would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the non-moving party to make the showing ... [required by Rule 56(e) ]." *Id.*

■ The evidence of the non-moving party is to be considered as true, and justifiable inferences arising from the evidence are to be drawn in his or her favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. If the evidence of the non-moving party is "merely colorable," or is "not significantly probative," summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11. For example, a non-moving party may not successfully oppose a summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 887, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990). Rather, the non-moving party must offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Id.* at 887, 110 S.Ct. at 3188.

## 2. *Age–Plus–Sex Discrimination Claim*

Arnett filed this action alleging that the defendants discriminated against her in violation of the Age Discrimination in Employment Act ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.* In other words, Arnett's complaint contains two counts. The first count alleges violations of the ADEA and seeks relief pursuant to the ADEA and the Civil Rights Act of 1991 ("CRA of 1991"). The second count, entitled "Sex Plus Age Discrimination," alleges that plaintiff was discriminated against because she was a female over the age of forty. In support of the second count, Arnett points out that all of the equal employment specialists for DISC have been women under the age of forty or men over the age of forty. The second count also seeks relief pursuant to the CRA of 1991. The complaint requests a trial by jury and an award of compensatory and punitive damages.

The defendants only seek summary judgment in their favor with respect to the second count of the complaint. They argue that because Title VII does not allow "sex-plus-age" discrimination claims, count two of Arnett's complaint should be construed as two separate claims—one for sex discrimination and another for age discrimination. They then argue that (1) plaintiff cannot establish a *prima facie* case of sex discrimination because the persons who were ultimately chosen for the two positions for which she applied were women, and (2) plaintiff's Title VII claim for age discrimination must fail because age discrimination claims may only be brought pursuant to the ADEA. This is true, the defendants argue, despite their admission that all of the equal employment specialists for DISC have been women under the age of forty or men over the age of forty.

 .If the defendants' first argument is correct, that "sex-plus-age" discrimination claims are not viable under Title VII, then count two of plaintiff's complaint can only be read as two separate claims—one for sex discrimination and another for age discrimination. And, if forced to analyze these claims separately, it is clear that each would not survive summary judgment because (1) plaintiff fails to state a *prima facie* case of *pure* sex discrimination based on the well-established *McDonnell Douglas* framework,[4] and, (2) complaints alleging only age discrimination are outside the scope of Title VII, 42 U.S.C. § 2000e–2(a) (Title VII only protects against discrimination based on race, color, sex and national origin). *See also Fields .v. Texas Central Education Agency*, 754 F.Supp. 530 (E.D.Tex.1989), *aff'd*, 906 F.2d 1017 (5th Cir.1990), *cert. denied*, .498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991).

Arnett, however, claims that her Title VII claim should not be separated into two separate claims. She argues that she brings her Title VII claim as a woman, and that she is a member of a protected subclass under Title VII—that is, older women. She·relies on a form of Title VII discrimination referred to over the years as "sex-plus" discrimination. *See* Leslie S. Gielow, Note, *Sex Discrimination in Newscasting*, 84 Mich.L.Rev. 443, 447–456 (1985); Patti Buchman, Note, *Title VII Limits on Discrimination Against Television Anchorwomen on the Basis of Age–*

*Related Appearance*, 85 Colum.L.Rev. 190, 195–203 (1985); *see also Willingham v. Macon Telegraph Publishing Co.*, 507 F.2d 1084, 1088–89 (5th Cir.1975).[5] In a "sex-plus" discrimination case, the Title VII plaintiff does not allege that an employer discriminated against a protected class as a whole, but rather that the employer disparately treated a subclass within the protected class. *Id.* Such a theory of sex discrimination was first recognized by the U.S. Supreme Court in 1971. *Phillips v. Martin .Marietta Corp.*, 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971).

In *Phillips*, the defendant company had a policy of not accepting job applications from women with pre-school age children. The Fifth Circuit had originally held that although the defendant admitted to treating men differently, the plaintiff had failed to make out a *prima facie* case of sex discrimination because .75–80% of those hired for the position for which plaintiff applied were female. On appeal, the Supreme Court vacated summary judgment in favor of the defendant finding that although not *all* women were affected, Title VII did not permit "one hiring policy for men and another for women[.]" *Phillips*, 400 U.S. at 544, 91 S.Ct. at 497. With that holding, the Court established the rule that if a Title VII plaintiff can show that she would have been offered the position if she were a man, she can show a *prima facie* case of discrimination even if

---

4. To withstand a motion for summary judgment, the Title VII plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989) (citing *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). Absent direct evidence of discrimination, the plaintiff may.attempt to prove intent through the framework established in *McDonnell Douglas*. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *see also Burdine*, 450 U.S. at 252, 101 S.Ct. at 1093. In this case, plaintiff may demonstrate a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) that she was qualified for and applied for the position in question, (3) that, despite her qualifications, she was denied the position, and (4) another employee outside her protected class was selected at the time plaintiff's request for selection was denied. *McDonnell Douglas*, 411

U.S. at 802, 93 S.Ct. at 1824; *see also Molthan v. Temple University*, 778 F.2d 955, 961 (3d Cir. 1985).

In this case, plaintiff, a woman, claims she was qualified and applied for the positions in question. .It is undisputed, however, that other women were selected instead of plaintiff. Thus, according to this framework, plaintiff fails to satisfy the fourth element of a *prima facie* case of *pure* sex discrimination. .

5. Because an amendment to Title VII which would have added the word "solely" to modify "sex" was defeated on the floor of the House of Representatives, 110 Cong.Rec. 2728 (1964), courts have found that the inclusion of "sex plus" discrimination within the proscription of Title VII has "legitimate legislative underpinning." *Willingham*, 507 F.2d at 1089; *see also Jefferies v. Harris Cty. Community Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir.1980). .

other women were offered the same position. For purposes of determining whether there was disparate treatment, the plaintiff's class is defined as a subclass of women, for example, women with preschool children.

In the next case to address the issue of sex-plus discrimination, the defendant airline required that all its female flight attendants be unmarried, but did not require the same of male flight attendants. *Sprogis v. United Airlines*, 444 F.2d 1194, 1194–98 (7th Cir.), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). Following the Supreme Court's holding in *Phillips*, the Fifth Circuit held that this employment policy constituted sex discrimination in violation of Title VII. The Court stated:

> [Title VII] is not confined to explicit discrimination based "solely" on sex. In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes. [Title VII] subjects to scrutiny and eliminates such irrational impediments to job opportunities and enjoyment which have plagued women in the past. The effect of the statute is not to be diluted because discrimination adversely affects only a portion of the protected class.

*Id.* at 1198 (footnote omitted).

The Fifth Circuit had another opportunity to explain the theory of sex-plus discrimination in *Jefferies v. Harris Cty. Community Action Ass'n*, 615 F.2d 1025 (5th Cir.1980). In that case, the plaintiff argued that the defendant discriminated against her on the basis of both her race and sex—she was a black woman. Instead of treating her sex-plus claim as one combination claim, the district court separately addressed the plaintiff's claims of race discrimination and sex discrimination. The district court found that the plaintiff had failed to prove either race or sex discrimination and, therefore, dismissed her sex-plus claim. On appeal, the Fifth Circuit held that the district court improperly failed to address her claim of discrimination based on *both* race and sex. *Id.* at 1032. The Court reasoned:

In the absence of a clear expression by Congress that it did not intend to provide protection against discrimination directed especially toward black women as a class separate and distinct from the class of women and the class of blacks, we cannot condone a result which leaves black women without a viable Title VII remedy. If both black men and white women are considered to be within the same protected class as black females for purposes of the *McDonnell Douglas* prima facie case and for purposes of proof of pretext after an employer has made the required showing of a legitimate, nondiscriminatory reason for the adverse employment action, no remedy will exist for discrimination which is directed only toward black females.

*Id.* at 1032–33. Thus, the Court held that discrimination against black females can exist even in the absence of discrimination against black men or white women, and that for purposes of establishing a *prima facie* case, black men and white women must be treated as persons outside the plaintiff's protected class. *Id.; see also Graham v. Bendix Corp.*, 585 F.Supp. 1036, 1047 (N.D.Ind.1984) ("The duty not to discriminate is owed *each* minority employee, and discrimination against one of them is not excused by a showing the employer did not discriminate against all of them, or there was one he did not abuse."), *quoting Furnco v. Waters*, 438 U.S. 567, 579, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978); *but see DeGraffenreid v. General Motors*, 413 F.Supp. 142, 143 (E.D.Mo.1976) (black women not a Title VII class).

■ What has emerged from *Phillips* and its progeny is a rule which allows plaintiffs to bring a Title VII claim for sex discrimination if they can demonstrate that the defendant discriminated against a subclass of women (or men) based on either (1) an immutable characteristic or (2) the exercise of a fundamental right. *Willingham*, 507 F.2d at 1091–92; *EEOC v. Sage Realty Corp.*, 507 F.Supp. 599, 609 n. 15 (S.D.N.Y.1981); *Valdes v. Lumbermen's Mut. Cas. Co.*, 507 F.Supp. 10, 11 (S.D.Fla.1980). Thus, employment policies which prohibit long hair on men but not on women, or which require men but not women to wear ties, have been upheld against Title VII challenges. *See Will-*

*ingham,* 507 F.2d at 1091–92; *Fountain v. Safeway Stores, Inc.,* 555 F.2d 753 (9th Cir. 1977); *Earwood v. Continental Southeastern Lines, Inc.,* 539 F.2d 1349 (4th Cir.1976). But, employers who discriminate against women who are black or married are clearly in violation of Title VII. *See Hicks v. Gates Rubber Co.,* 833 F.2d 1406 (10th Cir.1987) (black women are a protected subclass under Title VII); *Graham,* 585 F.Supp. at 1047 (same); *Sprogis,* 444 F.2d at 1198 (sex-plus-marital-status discrimination violates Title VII).[6]

■ Arnett claims that because age is an immutable characteristic, she has a viable sex-plus discrimination claim under Title VII. In response, the defendants argue that this case is different from those cited above because it combines a classification afforded protection by Title VII with a classification afforded protection by the ADEA, a completely separate statute. The defendants point out that the cases finding a viable sex-plus claim under Title VII have combined sex with either an unprotected classification, such as marital status, or another classification also protected by Title VII, such as race. The defendants, however, fail to cite relevant case authority or to explain why this distinction is significant except to say that the remedies afforded plaintiffs by the ADEA and Title VII are different. And, after much thought, I conclude that the distinction is insignificant.

The reasoning behind the holdings of *Phillips* and its progeny is that when an employer discriminates against members of one sex, the victims of such discrimination should have a remedy under Title VII which expressly prohibits discrimination on the basis of sex. The point behind the establishment of the sex-plus discrimination theory is to allow Title VII plaintiffs to survive summary judgment when the defendant employer does not discriminate against *all* members of the sex. Thus, the above-cited cases have not created a new remedy, but instead have closed a loophole through which defendant employers could escape Title VII liability. As the Court stated in *Jefferies,* an employer could discriminate against a discrete group of women—large women, black women, women with children, married women, pregnant women, older women—and be granted summary judgment in their favor because they had indeed filled these positions with other women not in the group. Such a result cannot be condoned. This is true whether or not the "plus" classification is also one afforded protection on its own, such as age under the ADEA.

It is important to remember that the second count of Arnett's complaint contains a claim for *sex* discrimination, not *age* discrimination. The "sex-plus" line of cases cited above merely provide a means for those Title VII plaintiffs who claim that their employers have discriminated against them on the basis of their sex to survive summary judgment under the *McDonnell Douglas* framework when their employers have not discriminated against all members of their sex. For example, Arnett claims that the defendants discriminated against her on the basis of her sex in violation of Title VII because they required more of her than they did of the male applicants for the position of equal employment specialist. That is, they required that she be under the age of forty.[7]

6. In a footnote, the Third Circuit recognized the viability of a sex-plus theory of discrimination under Title VII. *See, e.g., Bryant v. International Schools Services, Inc.,* 675 F.2d 562, 573 n. 18 (3d Cir.1982); *see also Jurinko v. Edwin Wiegand Co.,* 477 F.2d 1038, 1044 (3d Cir.1973) (citing *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971) for the position that employment practices that vary in their applicability to females and males may constitute sex discrimination in violation of Title VII) (dictum).

7. As mentioned above, the defendants admit that every woman selected for the position of equal employment specialist has been under the age of forty and every male equal employment specialist has been over the age of forty. Complaint and Answer at ¶¶ 52–53. The defendants also admit that Arnett and other female candidates over forty have been referred for the position of equal employment specialist, but have been ultimately rejected in favor of younger women or men over forty. Complaint and Answer at ¶ 54.

Thus, rather than adopt the distinctions suggested by the defendants, I find that the current line drawn between viable and nonviable sex-plus claims is adequate—that the "plus" classification be based on either an immutable characteristic or the exercise of a fundamental right. And, although I have uncovered no other case that recognizes a "sex-plus-age" discrimination claim under Title VII, it is clear that age is an immutable characteristic. For purposes of determining whether the defendants' discriminated against Arnett in violation of Title VII, I find she is a member of a discrete subclass of "women over forty." Accordingly, and without dispute from the defendants on the facts underlying this point, I conclude that Arnett has shown a prima facie case under the *McDonnell Douglas* framework because (1) she is a member of the protected subclass, that is women over forty, (2) she was qualified for and applied for the positions in question, (3) despite her qualifications, she was denied the positions, and (4) other employees outside her protected class were selected, in this case two women under forty.[8]

Based on the foregoing, I will deny the defendants' motion for summary judgment on count two of Arnett's complaint.

## B. *Motion in Limine and Motion to Strike*

The defendants have also moved to strike Arnett's demands for a jury trial and for compensatory damages, and to preclude Arnett from introducing evidence at trial regarding compensatory damages. As stated above, Arnett's complaint contains two counts—one for age discrimination pursuant to the ADEA and one for sex-plus-age discrimination pursuant to Title VII. The defendants argue that Arnett is not entitled to a jury trial or to compensatory damages under the ADEA. Although the defendants fail to address a further issue, I will also discuss whether Arnett is entitled to a jury

trial and compensatory damages under Title VII given that I have denied the defendants' motion for summary judgment on Arnett's Title VII claim.

### 1. *ADEA*

In *Lehman v. Nakshian,* 453 U.S. 156, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981), the Supreme Court addressed the issue of whether a plaintiff in an action against the United States pursuant to the ADEA is entitled to a jury trial. The Court held that where Congress waives its immunity from suit, as it did in the ADEA, the plaintiff only has a right to a jury trial where Congress has affirmatively and unambiguously granted that right by statute. *Id.* at 160, 101 S.Ct. at 2701. Because Congress did not do so in the ADEA, plaintiffs in actions against the United States do not have a right to a jury trial when suing under the ADEA. *Id.* at 165, 101 S.Ct. at 2704; *see also Guillory–Wuerz v. Brady,* 785 F.Supp. 889 (D.Colo.1992); *Haimovitz v. U.S. Dept. of Justice,* 720 F.Supp. 516, 524 n. 1 (W.D.Pa.1989), *aff'd without op.,* 902 F.2d 1560 (3d Cir.1990). Therefore, I conclude that Arnett is not entitled to a jury trial on her ADEA claim.

The Supreme Court has not yet addressed the issue of whether the ADEA permits recovery of compensatory damages. However, the Third Circuit has held that a plaintiff in an ADEA action is not entitled to compensatory damages. *Blum v. Witco Chemical Corp.,* 829 F.2d 367, 376 (3d Cir. 1987); *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834 (3d Cir.1977), *cert. denied,* 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978); *see also Smith v. Office of Personnel Management,* 778 F.2d 258, 261 (5th Cir.1985), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986); *Haskel v. Kaman Corp.,* 743 F.2d 113 (2d Cir. 1984). Therefore, I conclude that under the applicable law Arnett is not entitled to compensatory damages under the ADEA.

---

8. Given that defendants' sole argument in support of their current motion for summary judgment is the legal unavailability of Arnett's sex-plus claim, they do not attempt to argue at this

stage that there existed a legitimate, legally conclusive nondiscriminatory reason for rejecting Arnett for the positions in question.

## 1242

### 2. *Title VII*

Before the enactment of the CRA of 1991, Title VII plaintiffs were not entitled to a jury trial or to compensatory damages. *Cohen v. Austin,* 826 F.Supp. 922, 922 (E.D.Pa.1993). The CRA of 1991 became effective on November 21, 1991, several months after the alleged conduct in this action. I have already concluded in prior opinions that the CRA of 1991 does not apply retroactively. *Blanding v. Pennsylvania State Police,* 811 F.Supp. 1084 (E.D.Pa.1992); *Aiken v. Bucks Ass'n for Retarded Citizens, Inc.,* 799 F.Supp. 522 (E.D.Pa.1992).[9] I am currently persuaded of no different conclusion. Therefore, I conclude that Arnett is not entitled to a jury trial or to compensatory damages under Title VII.[10]

### 3. *Conclusion*

For the foregoing reasons, I will grant the defendants' motion to strike Arnett's demands for a jury trial and for compensatory and punitive damages. However, because I find that the defendants' motion in limine to preclude Arnett from introducing evidence at trial concerning compensatory damages is overbroad and premature, I will deny without prejudice to the defendants' right to move to exclude specific evidence at a later date.

### III. CONCLUSION

For the foregoing reasons, I will deny the defendants' motion for summary judgment and the defendants' motion in limine, and will grant the defendants' motion to strike the plaintiff's demands for a jury trial and for compensatory and punitive damages.

An appropriate order follows.

### *ORDER*

**AND NOW,** this 29th day of March, 1994, upon consideration of defendants' motion for summary judgment on count two of plaintiff's complaint, defendants' motion in limine and defendants' motion to strike plaintiff's demands for a jury trial and for compensatory and punitive damages (Document No. 3), and the response of the plaintiff thereto, having considered the evidence presented in a light most favorable to the non-moving party, giving the non-moving party the benefit of all reasonable inferences arising from the pleadings and affidavits of record, and accepting as true all allegations of the non-moving party that conflict with those of the movant, and having found that there exist genuine issues of material fact, and having concluded that plaintiff is not entitled to a jury trial or to compensatory and punitive damages under the ADEA or Title VII, and having concluded that defendants' motion in limine to preclude Arnett from introducing evidence at trial concerning compensatory damages is overbroad and premature, it is hereby **ORDERED** that defendants' motion for summary judgment is **DENIED,** defendants' motion in limine is **DENIED WITHOUT PREJUDICE,** and defendants' motion to strike plaintiff's demands for a jury trial and for compensatory and punitive damages is **GRANTED,** and the claims under the Civil Rights Act of 1991 and subparagraphs (d) of each of the prayers for relief under Counts I and II of the complaint are hereby **STRICKEN.**

---

9. Neither the U.S. Supreme Court nor the Third Circuit have addressed the question of whether the CRA of 1991 applies retroactively.

10. Because I have concluded that the CRA of 1991 does not apply retroactively, I need not decide whether the CRA of 1991 amends the ADEA to afford plaintiffs with a right to a jury trial and to compensatory damages against the United States.