**Leon W. LUCE, Plaintiff,**

v.

**John H. DALTON, Secretary of the Navy, Defendants.**

**Civil No. 93–1687–BTM.**

United States District Court, S.D. California.

April 1, 1996.

**458**

Leon W. Luce, Fallbrook, CA, pro se.

Kathryn A. Snyder, U.S. Attorney, San Diego, CA, for defendants.

BATTAGLIA, United States Magistrate Judge.

Plaintiff moves to amend the complaint to add new theories of age discrimination.[1] Specifically, Plaintiff seeks to allege that he was wrongfully terminated because of his age, because of his age plus his religion, because of his age plus being a non-Mormon, and/or because of his age plus his hearing disability (i.e. Plaintiff seeks to allege "age-plus" theories of discrimination). Counsel for Defendant argues that the motion to amend should be denied because these claims are time-barred and, therefore, any amendment would be futile.

By Order of February 21, 1996, Counsel were to submit supplemental briefing regarding (1) whether there exists in the law a viable "age-plus" theory of liability; and (2) whether a time-barred cause of action may be used as a "plus" in an "age-plus" theory of discrimination under the ADEA. The Court found this matter appropriate for submission on the papers without oral argument pursuant to Local Rule 7.1(d)(1).

Upon review of all the papers submitted by both parties, and for the reasons set forth below, Plaintiff's Motion to Amend the Complaint is hereby DENIED.

### Discussion

1. *Legal Standard for Determining a Motion to Amend*

▆ Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." This policy favoring amendments of the pleadings is to be applied "with extraordinary liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990). Reasons justifying denial of a motion to amend under Rule 15(a) include undue delay, bad faith or dilatory motive, futility of amendment, and prejudice. *Moore v. Kayport Package Express,* 885 F.2d 531, 538 (9th Cir.1989).

1. The Motion to Amend was referred to Magistrate Judge Battaglia for hearing and determination pursuant to 28 U.S.C. § 636(b)(1)(A) by Judge Moskowitz's Order of January 23, 1996.

In opposition to the motion to amend, Defendant appears to argue that the amendment would be futile as the claims for religious and disability discrimination are time-barred. A proposed amendment is futile for purposes of denying a motion to amend where no set of facts may be proven under the amendment to the pleadings that would constitute a valid and sufficient claim or defense. *Miller v. Rykoff-Sexton, Inc.,* 845 F.2d 209, 214 (9th Cir.1988). As such, the standard for determining whether an amended complaint is legally sufficient to overcome an argument that amendment would be futile is the same as determining the legal sufficiency of a complaint under Fed.R.Civ.P. 12(b)(6). *Id.*

*2. Age–Plus Discrimination*

Plaintiff here proposes to amend his complaint to add "age-plus-disability" and "age-plus-religion" causes of action. It is important to note that Plaintiff's claim for religious discrimination has already implicitly been held by this Court to be time-barred. In addition, Plaintiff has never exhausted his administrative remedies with regard to his claim of disability discrimination, such that any disability claim is also time-barred. Plaintiff has clarified that the claim of disability discrimination is not necessarily one which would even rise to the level of protections under the Rehabilitation Act or Americans with Disabilities Act.[2] Therefore, Plaintiff cannot bring his claims of employment discrimination based upon religious or disability discrimination as separate causes of action before this Court.

The Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621 *et seq.* prohibits employers and labor organizations from discriminating against older workers with regard to the scope, terms, and conditions of employment. 29 U.S.C. § 623. The ADEA became law due to the rising numbers of long-term unemployment among older workers, resulting from arbitrary age limitations set by employers. 29 U.S.C. § 621. Plaintiff's case is currently plead as only one for age discrimination under the ADEA. However, Plaintiff seeks to amend his Complaint to add causes of action based upon "age-plus" theories of liability.

Plaintiff's proposed "age-plus" theories of liability derive from a line of cases which provide protection, under Title VII, to discreet subclasses such as African–American or Asian women. The "sex-plus" theory of liability is said to have been first recognized by the Supreme Court in *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971). In *Phillips,* the defendant employer obtained summary judgment on plaintiff's claim that she was discriminated against on the basis of her sex. Specifically, the facts presented at the trial court were as follows: (1) in 1966 defendant informed plaintiff that it was not accepting job applications from women with pre-school-age children; (2) as of the time of the summary judgment motion, defendant employed men with pre-school-age children; and (3) at the time plaintiff applied for employment with defendant, 70–75% of the applicants for the position she sought were women, and 75–80% of those hired for the position she sought were women. Based upon these facts, the trial court concluded that plaintiff presented no question of bias as against women. Upon review the Supreme Court held that the trial court erred in permitting one hiring policy for women and another for men, each of whom have pre-school-age children.

The theory of "sex-plus" discrimination was further explained by the Fifth Circuit Court of Appeals in *Jefferies v. Harris County Community Action Ass'n,* 615 F.2d 1025 (5th Cir.1980). In *Jefferies,* the court, based upon both the language of Title VII and the Supreme Court's decision in *Phillips,* recognized black women as a distinct subclass for purposes of Title VII protection. *Id.* at 1034. Title VII provides a remedy against employment discrimination based upon an employee's "race, color, religion, sex *or* national origin." 42 U.S.C. § 2000e–2(a). The court found that the use of the word "or" within the language of Title VII "evidences Congress' intent to prohibit employment discrimination based on any or all of the listed

---

**2.** Plaintiff's Supplemental Brief, p. 5, fn. 2.

characteristics." *Id.* at 1032. As such, the court reasoned that

> In the absence of a clear expression by Congress that it did not intend to provide protection against discrimination directed especially toward black women as a class separate and distinct from the class of women and the class of blacks, we cannot condone a result which leaves black women without a viable Title VII remedy. If both black men and white women are considered to be within the same protected class as black females for purposes of the *McDonnell Douglas* prima facie case and for purposes of proof of pretext after an employer has made the required showing of a legitimate, non-discriminatory reason for the adverse employment action, no remedy will exist for discrimination which is directed only toward black females.

*Id.* at 1032–33.

The Tenth Circuit has also recognized "sex-plus" theories of discrimination. In *Hicks v. Gates Rubber Company,* 833 F.2d 1406 (10th Cir.1987), a hostile environment harassment case under Title VII, the court found that plaintiff should have been permitted to aggregate evidence of racial hostility with evidence of sexual hostility. The court made this decision after discussing the intent of Congress to eliminate employment discrimination based upon race, sex, *or* national original, and relying upon the language quoted above from *Jeffries.*

The only case from the Ninth Circuit Court of Appeals which discusses "sex-plus" theories of discrimination is *Lam v. University of Hawai'i,* 40 F.3d 1551 (9th Cir.1994). In *Lam,* the plaintiff claimed she was discriminated against on account of her sex and/or race as an Asian woman. The trial court examined plaintiff's claims of race and sex discrimination separately and granted summary judgment on behalf of defendant on those claims. The Court of Appeals reversed, holding that "when a plaintiff is claiming race *and* sex bias, it is necessary to determine whether the employer discriminates on the basis of that *combination* of factors, not just whether it discriminates against people of the same race or of the same sex." *Id.* at 1562.

The court in *Lam* expressly recognized what the courts in *Jefferies* and *Hicks* implied—that there are peculiar stereotypes associated with subclasses of African–American and Asian women under Title VII. "Like other subclasses under Title VII, Asian women are subject to a set of stereotypes and assumptions shared neither by Asian men nor by white women," referring to an article which listed stereotypical references to Asian women such as geisha, dragon lady, concubine, and lotus blossom. *Id.* at 1562, fn. 21. These unique discriminatory biases justify subclass treatment under Title VII, so as to ensure that an employer is not permitted to avoid liability for discrimination merely by showing it has not discriminated against all women.

There are only two cases which have discussed combination of age with other factors in a theory of "plus" liability. In the first case, brought under Title VII, the court permitted the plaintiff to combine sex and age as a subclass of protected persons under Title VII. *Arnett v. Aspin,* 846 F.Supp. 1234 (E.D.Penn.1994). The court recognized women over age 40 as a subclass for liability under Title VII. In allowing plaintiff to utilize a sex-plus-age theory of discrimination, the court specifically noted that the case was one under Title VII, and not the Age Discrimination in Employment Act. *Id.* at 1240.

This notation by the court in *Arnett* was specifically recalled in the second case to discuss combination of age and other factors in a theory of "plus" liability, *Kelly v. Drexel University,* 907 F.Supp. 864, 875 fn. 8 (E.D.Pa.1995). In *Kelly,* the same judge who had accepted an sex-plus-age theory of employment discrimination under Title VII rejected an "age-plus" theory of liability under the ADEA. The trial court specifically rejected an "age-plus-disability" theory of discrimination, stating "I find no authority to recognize an "age-plus-disability" discrimination claim under the ADEA. Therefore, plaintiff is not entitled to protection as a member of a subclass of older workers with disabilities." The court recognized that the only "plus" theories of liability that had been acknowledged by court was "sex-plus" under Title VII, and was unwilling to import the

"sex-plus" theories into a completely different statutory scheme such as the ADEA.

The only authority cited by Counsel for Plaintiff in this case for the proposition that there exist "age-plus" theories of liability under the ADEA is Ernest C. Hadley, *A Guide to Federal Sector Equal Employment Law & Practice* 750 (1995 Ed.). This book states that "Just as a complainant may combine bases of discrimination under Title VII and allege discrimination based on membership in a subclass, a complainant also may base a complaint on being over 40 and a member of a Title VII class." However, the *Guide* contains no recognizable citation to any case authority which would support the assertion that there exists a viable "age-plus" theory of employment discrimination. Counsel for Plaintiff likewise has provided no citation to any case which would support this assertion.

The rationale underlying "sex-plus" theories of discrimination do not support the extension of the ADEA to subclass liability. Congress has not drafted one statute to govern all claims of employment discrimination, regardless of whether those claims are based upon any of the protected classifications of race, sex, religion, national origin, age, and disability. The factors which Plaintiff seeks to lump together in this lawsuit under the title of "age-plus" theories of discrimination are contained within four separate and distinct statutes: the Age Discrimination in Employment Act, Title VII, the Americans with Disabilities Act, and the Rehabilitation Act. If Congress had intended to allow plaintiffs to mix and match theories of liability for employment discrimination, regardless of whether such claim was based upon race, sex, religion, national origin, age, or disability, it could have amended Title VII to provide protections to older Americans and Americans with disabilities within the confines of that statute. However, Congress chose to pass entirely separate legislation, providing for an entirely different basis for relief to persons who believe they have been discriminated against in employment based upon their age or disability. To allow Plaintiff here to aggregate claims under four completely different statutes, as an extension of

"sex-plus" theories of discrimination, would amount to judicial legislation. Therefore, the arguments of the courts based upon the interpretation of Title VII's explicit language as barring discrimination based upon race, sex, national origin, *or* religion cannot be extended to support "age-plus" theories of discrimination.

In addition, and perhaps more importantly, the "sex-plus" theories of discrimination are based upon a recognition of unique discriminatory biases against certain subclasses of individuals under Title VII. Unlike African-American or Asian women, there can be no argument that there are unique discriminatory biases against older workers with disabilities or older non-Mormon workers. There is no danger that Plaintiff would be prejudiced by his claims being analyzed according to the unique statutory schemes set up for claims of age discrimination under the ADEA, claims of religious discrimination under Title VII, and claims of disability discrimination under the ADA or Rehabilitation Act.

This Court finds that there does not exist in the law theories of "age-plus-religion" or "age-plus-disability" discrimination under the ADEA as proposed by Plaintiff in this case. Any amendment by Plaintiff to add these causes of action to his complaint would be futile as there exists no set of facts under which Plaintiff's claims under these theories of liability can stand. Therefore, Plaintiff's motion to amend his complaint is hereby DENIED.

*3. Time–Barred Nature of the "Plus" Factors*

■ Even assuming Plaintiff is correct in alleging an "age-plus" theory of employment discrimination, Counsel for Defendant argues that Plaintiff's amended complaint should not be permitted because the "plus" factors alleged by Plaintiff are, in essence, time-barred causes of action.

Both the ADEA and Title VII contain provisions requiring the exhaustion of administrative remedies prior to the filing of a lawsuit alleging discrimination in employment in violation of those statutes. *See* 29 U.S.C. § 626(d) regarding procedural prerequisites under the ADEA; 42 U.S.C.

462

§ 2000e–5(e)(1) regarding procedural requisites under Title VII. One purpose of requiring that an administrative charge be brought prior to the institution of a lawsuit is to allow the opportunity to determine the scope of the alleged violation and attempt conciliation. *Kaplan v. International Alliance,* 525 F.2d 1354 (9th Cir.1975). The invocation of administrative remedies is generally contemplated as a condition precedent to litigation regarding allegations of employment discrimination. *Cooper v. Bell,* 628 F.2d 1208 (9th Cir.1980).

In this case, Plaintiff was terminated from his position with Metrology Engineering Centers on March 5, 1982. On March 26, 1982, Plaintiff appealed his termination to the U.S. Merits Systems Protection Board, claiming his discrimination was the result of age discrimination. Declaration of Kathryn Snyder ("Snyder Declaration"), filed as Exhibit A to Defendant's Memorandum in Opposition to Plaintiff's Motion to Amend, Exhibit 1. The Board appeal was dismissed for lack of jurisdiction, and such dismissal was affirmed by the United States Court of Appeals for the Federal Circuit on December 5, 1983. Snyder Declaration, Exhibit 2. In September 1987, Plaintiff hired an attorney who filed a complaint in this Court, alleging *only* age discrimination. Appendix B to Defendant's Opposition to Plaintiff's Motion to Amend. This complaint contained no allegations of religious or disability discrimination. The Court dismissed this complaint on February 7, 1990, remanding the Plaintiff's claim to the United States Navy and EEO Officer for investigation and determination. Snyder Declaration, Exhibit 3.

On October 4, 1990, Plaintiff filed a complaint with the Department of the Navy's EEO Office, claiming his termination was based upon religion, age, and physical handicap. Snyder Declaration, Exhibit 4. On December 11, 1990, Plaintiff's claim of age discrimination *only* was accepted for investigation. Snyder Declaration, Exhibit 5. The Department of the Navy's EEO Officer addressed *only* Plaintiff's claim of age discrimination in its August 13, 1993 letter dismissing the complaint for lack of jurisdiction. Snyder Declaration, Exhibit 6.

On November 1, 1993, Plaintiff, proceeding pro per, filed a complaint in the present action for age discrimination under the ADEA and religious discrimination under 42 U.S.C. § 1981. On May 9, 1995, the Court dismissed Plaintiff's claim of religious discrimination under § 1981 as preempted by the provisions of Title VII. Implicit in this order dismissing Plaintiff's religious discrimination claim, without leave to amend, is the fact that Plaintiff's claim for religious discrimination would have been time-barred. Otherwise, Plaintiff's claim for religious discrimination would have been dismissed with leave to amend.

As discussed above, the entire employment discrimination remedial statutory scheme is based upon the idea that claims should first be presented to the appropriate EEO Officer for attempts at conciliation, prior to the institution of any litigation. To allow a Plaintiff to satisfy the exhaustion requirements of the ADEA merely by filing a claim of age discrimination, and then years later adding allegations of religious and disability discrimination to that age claim, would be completely contrary to the purposes of statutory scheme of the ADEA. Allowing Plaintiff to amend to add time-barred causes of action as "plus" factors under an "age-plus" theory of discrimination under the ADEA would simply allow Plaintiff to backdoor testimony of his beliefs he was discriminated against based upon religion and/or disability. While this may constitute creative thinking on the part of Plaintiff's new counsel, there is no rationale supporting such an amendment.

Therefore, even assuming there exists an "age-plus" theory of liability under the ADEA, this Court finds that the "plus" factor may not be an otherwise time-barred cause of action.

### *Conclusion*

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Leave to File a Second Amended Complaint.