Anthony M. WILLIAMS, Plaintiff,

v.

CITY OF ALLENTOWN, et al., Defendants.

No. CIV. A. 98–1573.

United States District Court, E.D. Pennsylvania.

Nov. 18, 1998.

Anthony M. Williams, Camphill, PA, pro se.

Charles J. Fonzone, Allentown, PA, for City of Allentown.

Leighton Cohen, County of Lehigh, Dept. of Law, Renee L. Cohn, Deputy County Solicitor, Allentown, PA, for Sheriff Rossi, Rick Griffith, Scott Moyer, Nick Hromiak, Jennifer Pastorius, David Carr.

Leighton Cohen, County of Lehigh, Dept. of Law, Allentown, PA, for Bill Williams.

## MEMORANDUM & ORDER

KATZ, District Judge.

On March 26, 1998, Plaintiff Anthony Williams filed a complaint against fourteen defendants alleging violations of 42 U.S.C. § 1983.[1] One of these defendants, the City

---

1. These defendants were the City of Allentown, Sheriff Rossi, Deputies Rick Griffith, Scott Moyer, and Nick Hromiak; Jennifer Pastorius; David Carr; Bill Williams; Lieutenants Robert Andrews and Paul Maley; Captain James Bloom, Lieutenant Robert McFadden; Sergeant Watson; and the County of Lehigh.

of Allentown, was subsequently dismissed from the suit with prejudice. *See* Order of May 23, 1998. The remaining defendants now move for summary judgment, arguing that the plaintiff's claims are precluded by the doctrine of res judicata as well as by other substantive considerations.

*Factual Background*

The basis for Mr. Williams' present action is an incident that occurred on October 9, 1996. On that date, according to the complaint,[2] Mr. Williams was brought in handcuffs and shackles to the courthouse by the Lehigh County Sheriff's Department for a court hearing. Following the hearing, the plaintiff was taken to the courthouse holding facility. Mr. Williams' complaint then states that while he was still shackled, the officers who took him into the holding pen severely beat him with their boots and closed fists. He further alleges that the officers forced his left eye open and sprayed mace into his eyes, nose, and mouth. *See* Compl. ¶¶ 1–4. As a result of this beating, the plaintiff claims numerous physical injuries, including partial blindness, a fractured nose, lacerations, back pain, limited leg movement, black-outs, and emotional trauma. *See id.* ¶¶ 5–6.

In addition to the beating itself, Mr. Williams alleges misconduct at the disciplinary hearing following the October 9 incident. *See id.* ¶¶ 12–14. Mr. Williams now claims that the officer's report regarding the incident was false and that the hearing board conspired with the allegedly wrongdoing officers to violate his rights. *See id.*[3]

The primary difficulty with Mr. Williams' complaint in this case is that another case alleging the same facts was dismissed by this court on a motion for summary judgment on May 8, 1997. In that case (docket number

96–6627), which was amended numerous times, Mr. Williams alleged numerous incidents in which his rights were violated. One of those incidents was the same event at issue in the present case. In his 1996 case, Mr. Williams stated that on October 9, 1996, he went to the courthouse for a preliminary hearing regarding an incident that was also at issue in that case. *See* No. 96–6627, Second Amended Compl. ¶ 1.[4] He stated that he was placed in the holding pen following the hearing, and that, without provocation, he was beaten with closed fists and kicked while he was handcuffed.[5] Mr. Williams said that his left eye was forced open and that mace or pepper spray was sprayed in his eyes, nose, and mouth while the officers repeatedly called him a "snitch." *Id.* ¶ 7. This earlier complaint also described the allegedly negligent treatment of his injuries by the prison hospital staff. *See id.* ¶¶ 11–18, 24.

The earlier complaints do not seem to include specific allegations regarding the subsequent misconduct hearing, although Mr. Williams does repeatedly accuse defendant McFadden of violating his rights in other misconduct hearings. *See, e.g.* No. 96–6627, First Amended Compl. ¶¶ 3–5. While the matter is not entirely clear, the court assumes that the allegations of the present complaint are new in this respect.

All aspects of the 1996 case were dismissed by this court on April 8, 1997, upon defendants' motion for summary judgment. *See Williams v. Sweeney,* No. 96–6627, 1997 WL 177800 (E.D.Pa. Apr.8, 1997). The court did not discuss the October 9 incident in detail when granting summary judgment. However, based upon discovery as well as upon a report presented by the prison pursuant to

2. For the sake of clarity, the term "complaint" used alone shall refer only to the complaint in the present case.

3. Subsequently, a criminal complaint was filed in which Mr. Williams was charged with both simple and aggravated assault arising out of the October 9 incident. He pled guilty to simple assault. *See* Defs.' Mot. for Summ. J. Exs. E, F.

4. Although Mr. Williams' First Amended Complaint discusses the October 9 incident, *see* No. 96–6627, First Amended Complaint ¶¶ 1–9, the

Second Amended Complaint provides relatively more detail. Altogether there were four Amended Complaints and a Supplemental Complaint, each of which actually added incidents and defendants rather than replacing or superseding any portion of the previous complaints.

5. The previous paragraph states that his handcuffs were removed. *See id.* ¶ 5. Also, in the one difference in detail between the two complaints, Mr. Williams stated that he was initially in a wheelchair because of his weakness from a hunger strike. *See id.*

court order, the court determined that Mr. Williams "attacked the Sheriff's Deputies who were returning him to the LCP from the courthouse where he was attending a court hearing on October · 9, 1996" and that he "instigated" this altercation and "suffered no serious injury." *See Williams,* 1997 WL 177800, *1; *see also* Ex D. of Defs.' Mot. for Summ. J. (report describing October 9, 1996, incident).[6] The court also rejected Mr. Williams' allegations of physical injury based upon medical reports submitted in discovery. *See Williams,* 1997 WL 177800, at *3–4. That decision was summarily upheld by the Third Circuit. *See* 141 F.3d 1156 (3d Cir. 1998).

Mr. Williams is now apparently attempting to litigate each individual incident that was previously alleged to be part of a continuing series of abuses. This court has already dismissed one such attempt primarily on the grounds of res judicata. *See Williams v. Lehigh County Dep't of Corrections,* No. 98–1879, 1998 WL 634893 (E.D.Pa. Sept.15, 1998). Because there are no meaningful differences in the claims in the 1996 and present cases, the same result is necessary in this case.

*Discussion* [7]

■■ Res judicata, or claim preclusion, "prohibits reexamination not only of matters actually decided in the prior case, but also those that the parties might have, but did not

assert in that action." *Edmundson v. Borough of Kennett Square,* 4 F.3d 186, 189 (3d Cir.1993). For a party to invoke res judicata in defense of an action against it, that party must show that there has been "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *United States v. Athlone Indus.,* 746 F.2d 977, 983 (3d Cir.1984); *see also Board of Trustees v. Centra,* 983 F.2d 495, 504 (3d Cir.1992) (same). "All facts, allegations, and legal theories which support a particular claim, as well as all possible remedies and defenses, must be presented in one action or are lost." 18 James Wm. Moore et al., *Moore's Federal Practice* § 131.01(3d ed. 1998). Mr. Williams' present action meets each of the three aspects of the test, and his suit is accordingly barred.

■ First, Mr. Williams' previous claim was subject to a final adjudication on the merits. "It is well established that a grant of summary judgment is a final adjudication." *Greenberg v. Potomac Health Systems, Inc.,* 869 F.Supp. 328, 330 (E.D.Pa.1994); *see also Sims v. Mack Trucks, Inc.,* 463 F.Supp. 1068, 1069 (E.D.Pa.1979); *Hubicki v. ACF Indus., Inc.,* 484 F.Supp. 519, 524 (3d Cir.1973). As noted in the factual description, it is true that Mr. Williams' 1996 case before this court included allegations of many other incidents

---

6. At the time of the earlier decision, Mr. Williams had not yet pled guilty to the assault charges brought against him.

7. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn therefrom in favor of the non-moving party. *See Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 361 (3d Cir.1987); *Baker v. Lukens Steel Co.,* 793 F.2d 509, 511 (3d Cir.1986). In other words, if the evidence presented by the parties conflicts, the court must accept as true the allegations of the non-moving party. *See Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

When the movant does not have the burden of proof on the underlying claim or claims, that movant has no obligation to produce evidence negating its opponent's case, but merely has to point to the lack of any evidence supporting the non-movant's claim. When the party moving for summary judgment is the party with the burden of proof at trial, and the motion fails to establish the absence of a genuine factual issue, the district court should deny summary judgment even if no opposing evidentiary matter is presented. *See National State Bank v. Federal Reserve Bank,* 979 F.2d 1579, 1582 (3d Cir.1992). However, a non-moving party "may not successfully oppose a summary judgment motion by simply replacing 'conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.'" *Arnett v. Aspin,* 846 F.Supp. 1234, 1237 (E.D.Pa.1994), *citing Lujan v. Nat'l Wildlife Federation,* 497 U.S. 871, 887, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

besides that of October 9, 1996. However, the October 9, 1996, incident was clearly considered and incorporated into the court's decision to grant summary judgment in that case. The minimal new details in the present action are insufficient to create a new cause of action.

■ Second, there is again identity of parties sufficient to bar relitigation of the plaintiff's claim. "For claim preclusion to apply, there must either be privity or an otherwise 'close or particular relationship' between the parties." *Greenberg*, 869 F.Supp. at 330, *quoting Avins v. Moll*, 610 F.Supp. 308, 316 (E.D.Pa.1984). A plaintiff may not bring a cause of action, lose, and then bring essentially the same cause of action against identical or closely related parties without encountering res judicata. *See Avins*, 610 F.Supp. at 316; *Bruszewski v. United States*, 181 F.2d 419, 422 (3d Cir.1950).

Each of the parties named in the present case are either identical to or in privity with those named in the previous case. Sergeant McFadden was sued in his individual and official capacities in the plaintiff's First Amended Complaint based on the October 9, 1996 incident. *See* No. 96–6627, First Amended Compl. ¶¶ 4–5. Defendants Griffith, Moyer, Hromiak, Pastorius, Carr, Andrews, and Maley were also sued in their individual and official capacities in that same amended complaint for their actions regarding October 9, 1996, *see id.* ¶ 13, as was the Sheriff's Department. *See id.* ¶ 14; *see also* No. 96–6627, Fourth Amended Compl. ¶ 8 (stating correct name of Lehigh County Sheriff Department). Deputy Sheriff Bill Williams was added to the 1996 suit in his official and individual capacity in the plaintiff's "amended complaint" that was filed on February 22, 1996. *See* No. 96–6627, Amended Compl. of February 22, 1997 ¶¶ 3–5 (Docket No. 57). Timothy Laws was sued in

his official and individual capacity as "John Doe" in plaintiff's original complaint in the first case and was specifically named in the amended complaint of February 15, 1997. *See* No. 96–6627, Fourth Amended Compl. ¶ 11. The Sheriff of Lehigh County was sued in the Fourth Amended Complaint as an official policymaker in his individual and official capacity. *See id.* ¶ 7.[8] Finally, Lehigh County itself was also sued in the 1996 case. *See* No. 96–6627, Amended Compl. of February 22, 1997 ¶ 10.

■ The only individuals named in the present suit who were not named specifically in the first action were Lehigh County employees Captain James Bloom and Sergeant Robin Watson. According to Mr. Williams' complaint in this case, Captain Bloom and Sergeant Watson (along with Lieutenant McFadden) conspired to violate plaintiff's constitutional rights by, respectively, drafting a report accusing Mr. Williams of misconduct, approving the report, and conducting a hearing finding Mr. Williams guilty of misconduct. *See* Compl. ¶¶ 12–14. However, as noted in the court's order of September 15, 1998, "government officials sued in their official capacities for actions taken in the course of their duties are considered in privity with the governmental body. They may invoke a judgment in favor of the governmental entity as may that body itself." *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir.1988). The suit against Lehigh County was dismissed in 1996; consequently, Mr. Williams may not now bring suits against individual officials within that entity in a separate action. Even if the specific claim regarding the misconduct hearing was not included in the 1996 case (as appears to be the case after examination of the numerous complaints), the events alleged occurred on October 18, 1996, *see* Compl. ¶ 13, and should have been included in the

8. The plaintiff's suggestion that the lack of personal service effected on the majority of these individuals in his first case means that there is no res judicata bar to his current action against them is without merit. The defendants point out in their motion for summary judgment that the counsel for Lehigh County represented the interests of the County and all County personnel with regard to the claims in the first suit. *See* Brief in Support of Motion for Summary Judgment at 4.

Moreover, the lack of service does not alter the fact that Mr. Williams had a full opportunity to litigate all of his claims in the first suit and that these claims were dismissed for substantive legal reasons. *See, e.g., Gambrell v. Hess*, 777 F.Supp. 375, 381–83 (D.N.J.1991) (stating that even a defendant who was not formally served as a party in first case could invoke res judicata in second action alleging the same facts).

allegations in 1996 so as to avoid the bar of res judicata. *See, e.g., Edmundson,* 4 F.3d at 189.[9]

▮ Additionally, the personal capacity suits against these individuals are also barred by res judicata as Bloom and Watson are in privity with the prior defendants. Absent some other factor, an individual sued in his or her personal capacity is not automatically in privity with a government entity as is the case in an official capacity suit. *See, e.g., Bryant v. Philadelphia,* 1992 WL 220988, *2 (E.D.Pa. Sept.1, 1992). However, the Third Circuit has "long recognized that privity is a legal conclusion; the privity inquiry should be flexible enough to acknowledge the realities of parties' relationships." *First Options of Chicago, Inc. v. Kaplan,* 913 F.Supp. 377, 384 (E.D.Pa.1996). The court should examine whether there is "such an identity of interests between the first and second party that the second should ever be deemed in privity with the first." *Id.* In this case, Bloom and Watson are being sued for their actions relating to an event that the court previously ruled, for reasons of qualified immunity, to be properly decided on summary judgment. These two individuals have a sufficiently close relationship with prior parties that they should be considered in privity with those former parties. *See, e.g., Bruszewski v. United States,* 181 F.2d 419, 422 (3d Cir. 1950) (stating that party may not bring identical cause of action against one defendant and then bring subsequent action against closely related defendants); *Rodziewicz v. Beyer,* 809 F.Supp. 1164, 1167 (D.N.J.1992) (holding that res judicata barred subsequent § 1983 suit against employees of Department of Corrections after Department of Corrections prevailed in state court hearing on

same issue); *Gambrell,* 777 F.Supp. at 382–83 (applying res judicata when suit was same except for addition of related defendants).[10] Any other holding would reward litigants who failed, intentionally or not, to include all relevant parties in action and would permit two (or possibly many more) attempts to try the same cause of action.

▮ Finally, the causes of action are identical. While courts have struggled mightily in other contexts to determine whether or not a cause of action is the "same" for res judicata purposes, this case does not require the court to delve into such complex issues. The Third Circuit has stated that it will "not adhere to any mechanical application of a single test but [will] instead focus on the central purpose of the doctrine of res judicata." *Athlone Indus., Inc.,* 746 F.2d at 984. The court should look to whether the acts complained of and the demand for relief are the same; whether the theory of recovery is the same; whether the witnesses and documents necessary at trial are the same; and whether the material facts alleged are the same. *See id.; see also Greenberg,* 869 F.Supp. at 331 (applying transactional test and looking to whether "each lawsuit's factual basis arises from the same events and occurrences").

▮ In this case, all four elements are the same. Both the 1996 case and the present case deal with the alleged violations of the plaintiff's rights stemming from the same October 9, 1996 incident. The details are, as noted, virtually identical, and, with the exception of two people, the same individuals have been named as defendants. While the 1996 claim included numerous incidents in addition

---

**9.** This new allegation may be contrasted with that included in the decision issued recently in *Williams v. Lehigh County Dep't of Corrections,* No. 98–1879, 1998 WL 634893 (E.D.Pa., Sept.15, 1998). In that case, Mr. Williams claimed that he had been threatened by a correctional officer in 1998, long after the previous case had been dismissed. He also attempted to sue another defendant based upon her actions following the dismissal of the first case. While the court also dismissed those new claims based upon a failure to state a constitutional claim and a lack of vicarious liability, they were not subject to the res judicata bar as are the present claims.

**10.** In the alternative, defendants Watson and Bloom can also claim the same qualified immunity that was the basis for the summary judgment in the 1996 action. In that action, this court found that the actions of the correctional institution's personnel were proper and found that Mr. Williams had indeed provoked the incident by his own behavior. There is no suggestion that the actions of Mr. Watson and Mr. Bloom were in violation of a clearly established statutory or constitutional right of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

to the October 9, 1996 incident, focusing on one aspect of a dismissed case is insufficient to defeat res judicata. In short, the third test is met, and res judicata bars the action against each claim and each defendant.

Permitting Mr. Williams to continue this action would disregard the basic public policy rationales behind res judicata. The present case does not raise complex issues of the res judicata effects of judgments in different federal jurisdictions or in state and federal courts: this is a straightforward attempt to relitigate specific claims that have already been conclusively decided against the plaintiff. Consequently, the court does not reach the other issues argued in the defendants' motion for summary judgment.

An appropriate order follows.

### ORDER

**AND NOW,** this day of November, 1998, upon consideration of the Defendants' Motion for Summary Judgment and the response thereto, it is hereby **ORDERED** that the Defendants' Motion is **GRANTED.**